# JACK S. WELLER v. NORTHWEST AIRLINES, INC.[1]

May 15, 1953.

No. 35,872.

[1]Reported in 58 N. W. (2d) 739.

*Doherty, Rumble, Butler & Mitchell* and *R. J. Leonard,* for appellant.

*Irving H. Green,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action for injuries sustained by plaintiff on September 4, 1949, when he fell between a removable stairway or ramp and a plane to which it was adjacent while embarking on the plane at defendant's airport in Chicago. The jury returned a verdict in his favor in the sum of $50,000. This is an appeal from an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial.

Plaintiff, a passenger on defendant's plane, arrived in Chicago from Minneapolis on the afternoon of September 4, 1949, and contemplated returning to Minneapolis the same date with his infant daughter who had been visiting in Chicago. Upon the plane's arrival at the airport in Chicago, defendant's employees moved a landing platform or ramp near the door thereof for the purpose of permitting passengers to disembark therefrom. Instead of placing this platform directly adjacent to or flush with the plane door, defendant's employees left an open space or gap between the edge of the platform and the door. Plaintiff testified that this gap was approximately 10 inches in width when he disembarked at Chicago and that later when he arrived to embark on the plane it was approximately 15 inches in width. At the time the platform was first moved to the plane, defendant's stewardess requested the airport employees to move it closer, but they refused. Prior to plaintiff's embarkment on the plane, this stewardess again requested the employees to move it closer, and they again refused to do so. She thereupon permitted the passengers to board, stating: "I have no choice. You will have to board as is, but be very careful."

Plaintiff thereupon proceeded up the ramp to the platform and when he reached the latter handed his daughter over to the stewardess. At the platform's edge was a black rubber-like protrusion shaped like a roller. After handing his daughter into the plane and while in the process of boarding it, plaintiff stepped on this protrusion, which turned, causing his foot to slip from under him so that he fell in a half circle, his back striking against the plane door, his shoulder and arm catching thereon, and his leg hanging between the platform and the plane. He was assisted into the plane by the steward and the stewardess. He was then suffering from shock and pain in his arm, back, and neck. Upon arrival at Minneapolis he disembarked, but he testified that he then felt dizzy, had a headache, and seemed more or less paralyzed.

Several days later he called upon Dr. M. Z. Goldner, an orthopedic surgeon in Minneapolis, who testified that at that time he found plaintiff had a tenderness in his lower back and in his right shoulder joint and that he reached the conclusion that plaintiff had sustained injuries to his neck, lower back region, and right upper extremity in the accident. The following January in a subsequent examination, Dr. Goldner diagnosed plaintiff's difficulties as "injury to his intervertebral disc, presumably at the third or fourth lumbar levels." This persisted up to the time of trial.

Three months after the accident plaintiff called upon Dr. Harold Noran, a neurologist. His examination disclosed that plaintiff had nystagmus (jerking of the eyes), ataxia (difficulty in balancing while walking), a positive Romberg sign, and a weakness in the right upper extremity. On Dr. Noran's advice plaintiff was hospitalized for the purpose of further examinations and tests. These included an examination of the spinal fluid which disclosed a spinal fluid protein content indicative of an active disease in the nervous system, which Dr. Noran diagnosed as multiple sclerosis.

On appeal it is contended that (1) the evidence establishes plaintiff's contributory negligence as a matter of law; (2) the evidence is insufficient to establish that plaintiff sustained permanent injuries or that there was a causal connection between the accident

and the multiple sclerosis with which plaintiff is afflicted; and (3) the damages are so excessive as to indicate passion and prejudice.

■ We believe that the question of plaintiff's contributory negligence was properly submitted to the jury for its determination and that its finding in plaintiff's favor thereon has adequate support in the evidence.

Defendant's position is that the plaintiff's testimony indicates that plaintiff was aware that the rubber-like protrusion was a roller and that notwithstanding his knowledge he stepped upon it, thus establishing his negligence as a matter of law. The testimony is as follows:

"Q. Now, what is there on the end of the platform; * * *?

 * * * * *

"A. It seems to be a roller, which I believe is made out of rubber.

"Q. You don't claim to know exactly what it was, do you?

"A. No.

"Q. But that is how it looked to you at that time?

"A. Yes, sir."

Later in the examination of plaintiff the following questions and answers appear:

"Q. And when you stepped on it, did it roll?

"A. Yes.

 * * * * *

"Q. Did you know that it was a roller or were you warned that it was a roller of any kind?

"A. No, I did not.

"Q. Did the hostess tell you not to step on the roller?

"A. No.

"Q. When the hostess told you to be careful going on the plane, you were as careful as you could be?

"A. Very careful."

We do not feel that the only conclusion which can be drawn from the testimony outlined is that plaintiff was aware of the fact that he was stepping upon a rubber roller prior to the time of his fall.

It is conceivable that the expression "at that time" might have been intended to refer to the moment after the fall or during the course of the fall. This finds support in the latter portion of plaintiff's testimony where he states that he did not know the protrusion was a roller and had not been warned to this effect. It is true that the testimony lacks clarity. The trial court indicated that it had arrived at the conclusion that plaintiff was not aware of the nature of the protrusion before he fell and that his testimony with respect thereto related to his perception after the fall while he was dangling between the plane and the platform.

There is no further evidence on this point. It is only in the clearest of cases, when the facts are undisputed and where it is plain that only one reasonable conclusion can be drawn from them, that the question of contributory negligence becomes one of law. If there is an honest difference of opinion among reasonable men as to whether a party's conduct was negligent or otherwise, the question becomes one for the jury's determination. Lincoln v. Cambridge-Radisson Co. 235 Minn. 20, 49 N. W. (2d) 1; Spencer v. Johnson, 203 Minn. 402, 281 N. W. 879; Campion v. City of Rochester, 202 Minn. 136, 277 N. W. 422; Hack v. Johnson, 201 Minn. 9, 275 N. W. 381; Coffman v. Kummer, 179 Minn. 120, 228 N. W. 751.

Here, we cannot say that reasonable men could have come to but one conclusion concerning plaintiff's testimony, as defendant contends. The jury's verdict resolved the construction of the language in plaintiff's favor, and we do not feel that the court erred in refusing to set aside this finding in the light of the evidence disclosed.

■ Defendant asserts that plaintiff failed to establish that he had multiple sclerosis or, if so, that there was a causal connection between it and his accident. In determining these questions, the following testimony of Dr. Noran must be given consideration:

"Q. * * * what in your opinion caused this loss of sensation and these pains going down the left leg?

"A. Well, we had to come and arrive at some type of diagnosis in order to try to explain his difficulty.

* * * * *

"A. It was my opinion that the most likely diagnosis was multiple sclerosis. * * * scattered disseminated findings * * * showed definite fluctuations, remissions and exacerbations, and on one occasion the high spinal fluid protein. We ruled out certain conditions, such as syphilis and other things that cause scattered patch involvement of the nervous system. I felt the most probable diagnosis in this case was multiple sclerosis.

"Q. Is it your opinion at the present time, doctor, that this man did suffer the condition known as multiple sclerosis subsequent to this accident?

"A. That is my opinion."

Defendant asserts that the foregoing testimony is indefinite, speculative, and insufficient to establish the basis for a finding that plaintiff suffered from multiple sclerosis. In particular defendant refers to Dr. Noran's statement that "we had to come and arrive at some type of diagnosis." Defendant submitted no evidence to the effect that plaintiff was not afflicted with this disease. Dr. Noran had observed him on many occasions and made many tests upon him. Based upon his observations and the results of the tests and his knowledge of the symptoms of the disease, he expressed his opinion that defendant's difficulty was multiple sclerosis.

It is well settled that a medical expert's opinion need not be free from doubt or capable of demonstration. It is only necessary that it be in his judgment true. Mattfeld v. Nester, 226 Minn. 106, 32 N. W. (2d) 291, 3 A. L. R. (2d) 909. The use of the words "the most likely diagnosis" does not make the testimony speculative or conjectural but merely indicates the problem of all experts that, although their opinion be based upon tests and methods recognized and prescribed by the medical profession, nevertheless there is always the possibility of error. This fact, however, does not eliminate from the realm of evidence the opinions of medical experts, based upon diagnosis, tests, and other methods duly recognized, as to the type or nature of a particular disease or disability nor does it deprive the jury of the right to give due consideration to such opinions in arriving at a determination of the issues. Pittman v. Pillsbury Flour Mills,

Inc. 234 Minn. 517, 48 N. W. (2d) 735; Freeman v. Matson, 230 Minn. 261, 41 N. W. (2d) 249.

■ Defendant contends that the evidence is insufficient to support a finding that the multiple sclerosis suffered by plaintiff was caused by the injuries sustained. It appears undisputed that little is known as to the cause of this disease. Many eminent medical experts hold that trauma cannot cause the disease or precipitate or aggravate it while others equally eminent hold the opposite viewpoint. In consequence, few doctors of medicine will give an unqualified, unlimited opinion with reference to the question.

On this issue Dr. Noran, on behalf of plaintiff, testified as follows:

"Q. * * * Do you have an opinion as to whether or not there is any relationship between this accident * * * and this condition of multiple sclerosis?

"A. My opinion is that the injury was a precipitating factor in bringing on the condition."

"Q. You can't tell us with any degree of certainty that this accident had anything to do with the onslaught of this disease?

\* \* \* \* \*

"The Witness: Well, it is my opinion, based on the fact that he told me he had no symptoms before he had the injury, and thereafter had symptoms.

\* \* \* \* \*

"Q. You don't know, though, do you, doctor?

"A. I don't think anybody would know the absolute certainty, no.

"Q. So you can't tell us now?

"A. It is just my opinion."

Dr. William H. Hengstler, testifying for the defendant, on cross-examination stated that he had observed cases where a diagnosis of multiple sclerosis had been preceded by trauma or injury but expressed the opinion that such trauma could not have caused the disease in the cases referred to. On cross-examination he testified as follows:

"Q. Are there doctors in your field who do believe that sclerosis might be aggravated or excited by trauma?

\* \* \* \* \*

"The Witness: I believe there are men in neurology who do feel that injury plays a part. I believe it is a controversial subject.

\* \* \* \* \*

"Q. \* \* \* Some doctors and experts like yourself come to the conclusion that the accident was a cause, and some like yourself say it wasn't.

"A. I believe that is true, yes, sir."

The foregoing outlines of the testimony of the medical experts clearly evidence the doubt and uncertainty as to the cause of this disease but demonstrate that many medical experts agree that trauma may be a factor contributing thereto. Where there is such a difference of opinion and where the opinion of a reputable medical expert is submitted that in plaintiff's case the trauma which resulted from the accident was a precipitating factor in bringing on the condition, the causal relationship between the accident and the disease described becomes one for the jury's determination. Pittman v. Pillsbury Flour Mills, Inc. 234 Minn. 517, 48 N. W. (2d) 735; Freeman v. Matson, 230 Minn. 261, 41 N. W. (2d) 249. As stated in the Pittman case (234 Minn. 524, 48 N. W. [2d] 739):

"Although the absence of exact medical knowledge on the cause of cancer makes it impossible to say with absolute certainty whether a particular injury caused or aggravated a particular cancer, we are hardly compelled to say that a finding of cause and effect in a given case is without support in the evidence because such tenuous uncertainty exists."

Here the evidence discloses that prior to the accident plaintiff showed no symptoms of the disease or any other nervous disorder. Subsequent to the accident, and while under medical care, his condition began to deteriorate, and it was finally discovered by a reputable practitioner that he was suffering from multiple sclerosis. No other cause is apparent which might have intervened to bring about this

condition. The evidence of health, injury, and subsequent ill health standing alone gives a strong inference of cause and effect. Pittman v. Pillsbury Flour Mills, Inc. *supra;* Halper v. The Golden Rule, 180 Minn. 477, 231 N. W. 195; Austin v. Red Wing Sewer Pipe Co. 163 Minn. 397, 204 N. W. 323; Gaetz v. City of Melrose, 155 Minn. 330, 193 N. W. 691. This is particularly true where there is doubt as to the originating factors of the disease. Based upon these principles, we are of the opinion that there was sufficient proof to establish a casual connection between plaintiff's injury and his subsequent affliction, as the jury determined.

■ Defendant contends that the damages awarded are excessive. Prior to the accident plaintiff was a young, healthy man. He is now suffering from an incurable degenerative disease of the nervous system which the jury found was caused by the accident. He will be crippled for life, and within a short time in an economic sense will become useless. He has been required to give up a well-paying accounting practice and to sell a fairly profitable enterprise which he can no longer operate. He is without his prior sources of income and is incapable of any extensive productive effort. Under all of these circumstances, we do not feel the award was excessive, particularly in view of the present purchasing power of the dollar.[2]

The order appealed from is affirmed.

Affirmed.

MR. JUSTICE ROGER L. DELL, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[2] For statement of rule governing computation of damages where a pre-existing disease is aggravated by the negligence of another, see Nelson v. Twin City Motor Bus Co. 239 Minn. 276, 58 N. W. (2d) 561.