The WESTERN CASUALTY AND SURETY
COMPANY, Petitioner,

v.

Alfredo R. GONZALES, Respondent.

No. B–4574.

Supreme Court of Texas.

Jan. 29, 1975.

Mahoney, Shaffer, Hatch & Layton, Lee
Mahoney, Corpus Christi, for petitioner.

Robert D. Nogueira, Beeville, for respondent.

REAVLEY, Justice.

This is a workmen's compensation case in which the question is whether the evidence warrants an award for general disability rather than for no more than a specific injury to the workman's left hand or arm. The trial court's judgment was favorable to the workman and awarded him compensation for total and permanent disability. The Court of Civil Appeals affirmed with an ably written opinion. 506 S.W.2d 303.

On June 3, 1968, Alfredo Gonzales cut his left hand and severed tendons controlling the middle finger. Gonzales was hospitalized but received no immediate surgical repair. He thereafter underwent two operations to repair the severed tendons. In addition, electric shock therapy and heat treatments were prescribed in an attempt to free the injured tendon. These measures were unsuccessful, however, and the finger was amputated on July 23, 1969. After the second operation, Gonzales could not close his hand, lift his arm or pull or bend his elbow. He was given pills for his pain, and then injections of Nyloxin were administered. Nyloxin is attenuated cobra venom which apparently lessens pain by deadening the nerve endings. These shots caused swelling so great in his arm that the needle could not penetrate the welts there. Shots were then given in his legs. The nurse was unable to get the medicine to flow through the needle into his left leg. Gonzales said that when the needle was inserted into his leg, it felt like acid. Immediately after the leg injections, Gonzales became quite ill and suffered some sort of paralysis for about two weeks that prevented his leaving his bed. He experienced low back pains, numbness in the lower extremities, and developed a bilateral limp. He was equipped with a back brace and then began using a walking cane, both of which he continued to use up to the trial date.

There was an abundance of evidence to support the jury findings that this illiterate 36 year old man is totally and permanently disabled. The entire left side of his body is affected and he walks with difficulty. His employer and his job supervisor praised Gonzales as a worker and as a person, and they told of his determination to hold his job until Thanksgiving of 1971, at which time he had to be discharged because of the hopelessness of his physical condition and the danger which he constituted to others on the job. The question remains as to whether there is any evidence to support the finding that it was the injury to his left hand that extended to and affected his body generally.

The workmen's compensation statute, Art. 8306 § 12, Vernon's Ann.Civ. St., provides a schedule of compensation for specific injuries to certain extremities and members of the body. Thus, compensation for the loss of a second finger is 30 weeks, for the loss of a hand is 150 weeks, and for the loss of an arm is 200 weeks. The Legislature provides that this payment is to be "in lieu of all other compensation," and it has been held that the scheduled payment is the limit of compensation even though the consequence of losing a hand or leg for a particular workman is to render him unable to obtain and retain any gainful employment. Consolidated Underwriters v. Langley, 141 Tex. 78, 170 S.W.2d 463 (1943). If the injury to the particular member extends to and affects portions of the body beyond the member, or if his general health is impaired, the workman may recover for his general disability pursuant to other sections of the workmen's compensation statute. Great American Indemnity Co. v. Sams, 142 Tex. 121, 176 S.W.2d 312 (1944); General Accident Fire & Life Assur. Corp. v. Murphy, 339 S.W.2d 392 (Tex.Civ.App.1960, writ ref'd n. r. e.). The injury and disability do not become general by the mere fact that pain alone, originating in the condition or use of the injured extremity or member, travels beyond the margin of the extremity or mem-

ber to the general body. Texas Employers' Ins. Ass'n v. Shannon, 462 S.W.2d 559 (Tex.1970); Texas Employers' Ins. Ass'n v. Espinosa, 367 S.W.2d 667 (Tex.1963). The site of the trauma and its immediate effects are not, however, necessarily determinative of the nature and extent of the compensable injury. The full consequences of the original injury, together with the effects of its treatment, upon the general health and body of the workman are to be considered. Maryland Casualty Company v. Sosa, 425 S.W.2d 871 (Tex.Civ.App. 1968), writ ref'd n. r. e. per curiam, 432 S.W.2d 515 (Tex.1968); United Employers Casualty Co. v. Marr, 144 S.W.2d 973 (Tex.Civ.App.1940, writ dism'd jdgmt cor.).

The physical effects of the injury upon the body of Alfredo Gonzales beyond his left hand are not confined to pain associated with the impairment or use of his hand. His shoulder and left arm are weak and disabled; the muscles have become atrophied. He suffers from a swelling in his chest and pain that interferes with his breathing. He has worn a corset around his chest. The muscles and structure of his back have become so weak that he must wear a back brace, which was prescribed by his doctor, for support. His legs became affected after he received the injections of Nyloxin; they immediately became swollen, are currently weakened, and, as a consequence, he does not walk well.

■ The insurance carrier says, however, that there is no medical proof of causal connection between the original injury and the general injuries of Gonzales; the company insists that no doctor has testified to that connection "in reasonable medical probability" and cites these cases: Parker v. Employers Mutual Liability Insurance Company of Wisconsin, 440 S.W. 2d 43 (Tex.1969), and Insurance Company of North America v. Myers, 411 S.W.2d 710 (Tex.1966). Both of these cases dealt with the difficulty of establishing the causal connection between a particular act or injury and later disability due to cancer.

In both of the opinions, as in others, this Court has required medical expert opinion for the proof of causation, to link an act or condition or trauma with a subsequent physical disease or condition, when that relationship is beyond the common knowledge and experience of laypeople. Circumstantial evidence, such as the chain of events themselves, is useful to both expert and juror. Baird v. Texas Employers' Insurance Assn., 495 S.W.2d 207 (Tex.1973); Insurance Co. of North America v. Kneten, 440 S.W.2d 52 (Tex.1969); Porter v. Puryear, 153 Tex. 82, 262 S.W.2d 933 (1954); Highlands Insurance Co. v. Clements, 422 S.W.2d 218 (Tex.Civ.App.1967, writ ref'd n. r. e.); Weller v. Northwest Airlines, 239 Minn. 298, 58 N.W.2d 739 (1953). It is even suggested in the *Parker* opinion that trauma may be seen under some circumstances "to be so related to the onset of cancer to allow a jury decision whether it was in fact the cause." 440 S. W.2d 43, 48. Nevertheless, for present purposes we will assume that jurors may not conclude that operations upon the hand, together with injections in arm and legs of a strange drug, caused injury in the shoulder and chest and leg and back—unless that conclusion is supported by expert medical testimony.

■ The form of that expert testimony is not so important as its substance. Certainly a doctor is not required to use the usual expression that there is a "reasonable probability" of causal connection between original injury and present physical condition. Otis Elevator Company v. Wood, 436 S.W.2d 324 (Tex.1968); Steakley, Expert Medical Testimony in Texas, 1 St. Mary's L.J. 161 (1969). The doctor may state his opinion *more* positively: he may simply state that the original injury did cause the present physical condition. It is when he is uncertain, or does no more than acknowledge that everything is possible, that a gap in the proof may be closed only by the doctor deciding that the chances weigh more heavily in favor of the causal relation.

■ This Court has never required that the medical expert explain or even understand the precise biochemistry or mechanism by which the initial trauma affects the health or organs of the injured party. In *Parker* the Court speaks of opinions as to *probable relationships* as being "without theoretical explanation." 440 S.W.2d 43, 46. If every episode in the chain of degeneration within the body of a person had to be established in medical probability, the available expert witnesses, of either rare expertise or dishonesty, would be so few that injured persons could seldom make that proof. If the medical causation is highly uncertain to the layman, we require that a medical expert apply his learning and experience to the particular case and give an opinion as to whether, at least more likely than not, a cause produced an effect. That opinion may or may not be buttressed by an explanation of the process which occurred within the body; this goes to the matter of the credibility of the witness and of his opinion, but it is not a prerequisite to his expression of that opinion. Brett v. J. M. Carras, Inc., 203 F.2d 451 (3rd Cir. 1953); Lumbermen's Mutual Casualty Co. v. Industrial Accident Commission, 29 Cal.2d 492, 175 P.2d 823 (1946); Greene v. Cronin, 314 Mass. 336, 50 N.E.2d 36 (1943); 32 C.J.S. Evidence §§ 559, 569(2).

■ The events which ultimately resulted in the general injury and total disability of Alfredo Gonzales have been stated above. The record reveals an uninterrupted and increasingly debilitating sequence of events which had its genesis in the initial injury to his hand. The origin and cause of the physical consequences resulting in the general injuries have no other explanation in this record.

The medical evidence offered to support the jury finding of causal connection between specific injury and general injuries is found, primarily, in the testimony of Dr. Ernest Miller, a general practitioner in Beeville, Texas, to whom Gonzales was taken when he cut his hand. Dr. Miller saw Gonzales in excess of seventy-five times during the course of his treatment. In a letter to petitioner's claims manager, Dr. Miller, speaking of the weakness and pain in his patient's left side and chest, said it was "part and parcel of the involvement of the entire left arm." In closing that particular correspondence, Dr. Miller added, "I realize that it is hard for anyone else to conceive that he would have this much disability from a severed tendon, but this sequence of events has happened to this man and we will have to face it." Dr. Miller's opinion was that Gonzales would still be working "and not have a pain in the world" if he had not cut his hand. He testified that Gonzales was eager to get well and to work but that he could not do the ordinary tasks of a workman, and never would be able to do so, because of what was at first an injury to a finger. The doctor stated that his opinion was not "based on medical probability" because, "[m]edically speaking, you couldn't account for it." This is to say, just *how* the cut on the hand or the three operations or the shock therapy or the injections of Nyloxin, or either of these, caused the present condition of chest and back and leg, he could not describe.

Simply because Dr. Miller could not give a detailed explanation of the process of degeneration which occurred within the general body of Gonzales does not destroy the strength of his testimony to support the jury verdict. On the contrary, once having testified that the original injury was the cause of the present physical condition, the fact that Dr. Miller could not explain the process by which the specific injury reached the body generally was merely a matter going to the credibility of his opinion.

In opposition to Dr. Miller's testimony, the insurance carrier presented the deposition of an orthopedic surgeon in Corpus Christi who amputated the finger and then saw Gonzales on several subsequent occasions. This specialist was of the opinion that Gonzales "could work now" and that

his problem was simply disuse of his body and a decision to "give up because he has lost a part of his body, and namely a portion of one finger." This opinion conflicts with the testimony by the employer and job supervisor that Gonzales put forth every effort to do his job for three and a half years after his original injury and two and a half years after the amputation of his finger. It also conflicts with testimony that Gonzales went to a therapist regularly and made every effort to follow instructions to regain his strength. The jurors were entitled to conclude that the opinion of the specialist was erroneous.

The testimony of Dr. Miller, along with the fact that there was an uninterrupted chain of events leading from the specific injury to general injuries, is sufficient to support the jury finding that the injury to the left hand of Gonzales extended to and affected his body generally.

The judgments of the courts below are affirmed.

GREENHILL, C. J., notes his dissent.