**HARTFORD ACCIDENT & INDEMNITY COMPANY and/or New York Underwriters Insurance Company, Appellant,**

v.

**Leonard T. LUCAS, Appellee.**

**No. 989.**

Court of Civil Appeals of Texas, Tyler.

Feb. 17, 1977.

Rehearing Denied March 3, 1977.

William Drew Perkins, Lufkin, for appellant.

F. P. Granberry, Granberry & Hines, Crockett, for appellee.

DUNAGAN, Chief Justice.

The opinion delivered on January 20, 1977, reversing and rendering the judgment of the trial court is set aside and this opinion is substituted therefor.

This is an appeal by defendant-appellant in a workmen's compensation case wherein judgment was rendered and entered on a jury verdict awarding plaintiff-appellee total and permanent disability benefits as a result of an injury received on or about August 26, 1974.

Prior to judgment appellant filed a motion to disregard the jury's answers to Special Issues 1 and 3 and, subject to the motion to disregard, filed its motion for judgment non obstante veredicto on the grounds of no evidence or insufficient evidence to support the jury's answers to said issues and that said answers are against the great weight and preponderance of the evidence as to be manifestly unjust. Appellant raised the same questions in its motion for new trial. These motions were overruled.

Appellee in Paragraph IV of his First Amended Petition alleges:

"... that because of a pre-existing condition, Dr. Nathan W. Caldwell had advised your Plaintiff to restrict his employment to a position which requires less standing on his feet and thereafter was assigned to an office job by Plain-

tiff's employer, Nucor Corporation at its steel fabricating plant in Grapeland, Texas.

"On or about August 26, 1974, your Plaintiff, after having been ordered by his foreman, was in the process of looking for a shipment of steel angles that had been misplaced. He was walking on some bridging and his shoe caught on a piece of bent rod and he slipped. His foot slid in between two packages of bridging injuring his foot, let [leg] and other parts of his body. Thereafter he notified his foreman of the injury and was advised to render first aid to and for the injuries himself. The cut on his ankle received that day refused to heal and resisted medical treatment and developed thrombophlebitis and because of the condition resulting, your Plaintiff was ordered and forbidden to work and was found to be and is now because of said injury totally and permanently disabled from performing the ordinary tasks of such a workman, and, as such, has become, according to Texas Law within the meaning of the Workmen's Compensation Act, totally and permanently disabled, and in all reasonable likelihood this condition will continue for the balance of his natural life."

Appellant by its points of error 1, 2 and 3 contends that there is no evidence to support the jury's finding to Special Issue No. 1 [1], or the evidence is insufficient to support such answer and that the answer is so against the great weight and preponderance of the evidence as to be manifestly unjust and wrong.

By its points of error 4, 5 and 6 the appellant contends that there is no evidence to support the jury's answer to Special Issue No. 3 [2], or the evidence is insufficient to support such answer and that the answer was so against the great weight and pre-

ponderance of the evidence as to be manifestly unjust and wrong.

In 1971 plaintiff began his employment with the Nucor Company as a steel rigger. Appellee was suffering from diabetes at that time. In February 1972 he began receiving medical treatment from Dr. Nathan Caldwell for diabetes, complications thereof and for an ulcer on the big toe of his right foot. He was seen relatively frequently by his physician for the infection in his foot and was hospitalized in May 1972 for seven days for surgical procedure performed on his foot. In September 1972 he was hospitalized again and another surgical procedure was performed on his toe in October 1973. Appellee was also treated for regional enteritis and varicose veins. Except for the above described physical condition of the appellee, he was in reasonably good health. Dr. Caldwell, who testified on behalf of appellee, was the only medical expert to testify. He testified that at the time he saw the appellee on August 29, 1974, he definitely had an infected scratch on the left ankle with red, swollen areas around the lower left leg with shallow varicose veins on the right leg. The left leg had thrombophlebitis. Dr. Caldwell testified, "I think the thrombophlebitis was probably at least started at that time by the superficial injury that he received which became infected which is not uncommon in diabetics." The doctor further testified, "Well, any trauma, any injury, can predispose to thrombophlebitis, particularly also, if it happens to a person who has varicose veins, and particularly then, if the cut gets infected it can cause it."

In May 1974 appellee developed a chronic inflammatory disease of the small intestine. He was hospitalized in June 1974 for three days.

In March 1973 his physician advised him that he could not work on any job which

1. "SPECIAL ISSUE NO. 1: Do you find from a preponderance of the evidence that the injury sustained on or about August 24, 1974 was a producing cause of any total incapacity?
   "ANSWER: We do."

2. "SPECIAL ISSUE NO. 3: Find the duration of total incapacity, if any. (By answering 'Permanent' or by stating the ending date.)
   "ANSWER: Permanent."

required prolonged standing nor could he wear safety shoes. He was advised that the problem with his toe was chronic and he must have a sedentary job. In compliance with this advice he was moved to a desk job in the shipping department. His duties were to file papers and answer the telephone. Pursuant to a request, he was "looking for a bundle of bridges that a consumer hadn't received on his shipment." While doing so he hung his shoe "under a bridging tie and stepping down between the bridging made of angle iron, off balancing and cut my ankle." His physician referred to it as being a "superficial injury to his ankle." He worked a few days after the scratch, or cut, until it became infected. Since that day he has not worked.

The medical testimony also shows that there was no phlebitis prior to the cut ankle; Dr. Caldwell ordered appellee to cease working and stay off his feet as much as possible; that in Dr. Caldwell's opinion appellee is disabled; that appellee had no thrombophlebitis problem prior to the cut on his ankle and Dr. Caldwell testified "I think the episode with that leg in August at that time was related to the scratch on the leg" and also "I think that that injury predisposes to this episode"; that the trouble with the right big toe did not bring on phlebitis; Dr. Caldwell testified that the infection was immediately adjacent to the veins that became involved and for that reason "I thought there was a relationship."

The testimony is undisputed that appellee was suffering from diabetes, a circulation problem, and varicose veins prior to the injury of August 1974. Sometime after August 1974 he developed thrombophlebitis in both legs. The thrombophlebitis developed first in his left leg.

It is undisputed that the only "injury" he suffered on his job was a superficial cut, or scratch, on his left ankle approximately one-half inch long and one-eighth inch deep. Dr. Caldwell on direct examination testified:

"A. Well, the problem seemed that we could never get him completely free of inflammation of his legs, particularly the left.

"Q. What, in your opinion, caused that situation to occur?

"A. I think that the thrombophlebitis was the cause of the pain in his legs. I think the thrombophlebitis was probably at least started at that time by the superficial injury that he received which became infected which is not an uncommon problem in diabetics.

"Q. All right. What is the relationship between a cut and thrombophlebitis, medically?

"A. Well, any trauma, any injury can predispose to thrombophlebitis, particularly also, if it happens in a person who has varicose veins and particularly then, if the cut gets infected, it can cause it.

"Q. But for this scratch or cut that he received on his ankle, in your opinion would he have thrombophlebitis?

"A. Say that again.

"Q. But for the cut that he had received back in August of 1974, would he have developed this severe thrombophlebitis?

"A. In all likelihood he would not have. It's possible, who knows?

"Q. All right. Would it be a fair statement to say that these cuts predispose on the condition that he had at that time, would generally and does generally produce this result?

"A. No, not generally. Cuts don't produce thrombophlebitis."

The medical testimony also shows that appellee had some thrombophlebitis in both legs. In this regard Dr. Caldwell gave the following testimony:

"A. He has had some thrombophlebitis in the other leg also, yes, sir.

"Q. So, it would indicate from that that the thrombophlebitis was caused by something other than the scratch on the leg or cut on the leg?

"A. He had not had problems with this thrombophlebitis prior to August. I think the episode with that leg in

August at that time, was related to the scratch on his leg. I can't swear that it wouldn't have occurred otherwise.

. . . . .

"Q. Now, and you said you cannot tell whether he would or would not have had the thrombophlebitis with or without this superficial injury to his ankle.

"A. No, sir. I can't really say that he would or wouldn't have. I think that that injury did predispose to this episode."

Appellee has not alleged nor submitted an issue nor offered proof on any aggravation of a pre-existing injury.

■ When the assignment of error is that there is "no evidence," the reviewing court may consider only that evidence, if any, which, viewed in its most favorable light, supports the jury findings, and we must disregard all evidence which would lead to a contrary result. *Cartwright v. Canode,* 106 Tex. 502, 171 S.W. 696 (1914); *Biggers v. Continental Bus System,* 157 Tex. 351, 303 S.W.2d 359 (1957).

As to the causal connection between the injury in question and the thrombophlebitis, the doctor's testimony is couched in terms of "I think," "I thought," "possible," "who knows" and "it can."

■ It is undisputed that appellee received the injury in question while in the course and scope of his employment. However, the primary question is—was the injury the producing cause of appellee's disability? There is no evidence of probative force that in reasonable medical probability or reasonable probability that it did. Neither did the doctor testify positively that it did. The only testimony based on reasonable medical probability is that his "condition is going to exist in its present state or worse for the balance of his life." This testimony is applicable only to the duration of appellee's incapacity and not to the producing cause of his incapacity.

There is no dispute as to the type of injury appellee received nor that he developed thrombophlebitis first in his left leg about two or three days before he went to Dr. Caldwell on August 29, 1974. But there is no evidence of probative force to establish within reasonable medical probability the causal connection between the injury and his present condition.

■ The testimony of whether or not, in the opinion of the doctor, there is a reasonable medical probability that there was a causal connection between an injury and a disability is required (1) in instances where the question of causation is peculiarly within the realm of scientific knowledge, (2) in predicting the future manifestations of a present injury and (3) in malpractice cases. *Western Casualty and Surety Co. v. Gonzales,* 506 S.W.2d 303, 311 (Tex.Civ. App.-Corpus Christi 1974) affirmed 518 S.W.2d 524 (Tex.1975). We believe that this case falls within the first category above mentioned. In *Western Casualty and Surety Company v. Gonzales,* 518 S.W.2d 524, 526 (Tex.1975), the Supreme Court stated: "It is when he [the doctor] is uncertain, or does no more than acknowledge that everything is possible, that a gap in the proof may be closed only by the doctor deciding that the chances weigh more heavily in favor of the causal relation." The doctor's testimony in the instant case clearly shows that he was uncertain as to the causal relation between the injury and the thrombophlebitis and acknowledges it's possible that the injury caused the thrombophlebitis. He could not swear it did.

After a careful consideration of the doctor's testimony in its entirety and the record as a whole we have concluded that there is no evidence of probative force to support the jury's answer to Special Issue No. 1. We sustain appellant's first point of error. In view of our disposition of this

case we do not reach appellant's remaining points of error. *American Surety Co. v. Stemmons*, 413 S.W.2d 732 (Tex.Civ.App.-Tyler 1967, writ ref'd n. r. e.); *Insurance Company of North America v. Myers*, 411 S.W.2d 710 (Tex.1966).

The judgment of the trial court is reversed and judgment is here rendered that appellee take nothing.