Bill E. MAYES, Jr., Appellant,

v.

CITY OF MIDLAND, Appellee.

No. 08-89-00017-CV.

Court of Appeals of Texas,
El Paso.

Nov. 15, 1989.

Rehearing Overruled Dec. 13, 1989.

Ruff Ahders, Ruff Ahders, Associated, Odessa, Elaine Brady, Houston, for appellant.

Terry Rhoads, Diann Hanson, Cotton, Bledsoe, Tighe & Dawson, Midland, for appellee.

Before OSBORN, C.J., and FULLER and KOEHLER, JJ.

## OPINION

FULLER, Justice.

In a Worker's Compensation Act case, the jury returned a verdict failing to find a general injury but did find the worker suffered a permanent partial loss of the use of his left hand. We reverse and remand for a new trial.

The Appellant was a Midland City police officer at the time of the injury. The fact that he was injured in the course and scope of his employment was not contested but only the nature and extent of the injury.

## PLEADINGS

The Appellant's pleadings asserted that due to the injury, he suffered disabling injuries to his body which included: (1) injury and damage to the bones, nerves and soft tissues in his left hand, left arm, neck and body as a whole, leaving him totally and permanently disabled, (2) if not totally and permanently disabled, Appellant then claimed some total disability for a time and, then, partial permanent disability for the remainder of the time.

Appellee answered by pleading a general denial and then pled the injury was limited to a specific injury because: (1) it was limited to a partial loss of the use of a metacarpal of the second and/or third finger, or in the alternative, that (2) it was limited to a partial loss of the use of plaintiff's left hand.

Appellee then denied that any injury to the left hand extended to the arm, thereby denying any loss of use of the next greater member.

In the alternative, the Appellee then denied that any specific injury that might be found extended to and affected the body generally.

We, therefore, have a case where the worker is asserting only a general injury, and the insurance company defended on the basis that the injury was not a general injury but was limited to a specific injury.

The jury found no general injury but found a specific injury by finding the Appellant was permanently partially disabled as a result of the loss of the use of his left hand. The trial court entered judgment according to the jury verdict and then overruled Appellant's Motion for Judgment N.O.V. and Motion for New Trial.

## FACTS

Appellant was a Midland City policeman and was in the course and scope of his employment while trying to effect an arrest. The suspect ran into a house and with assistance slammed the door on the hand and/or wrist of the Appellant. Other officers came to Appellant's aid pulling him free but causing injury. Appellant was approximately thirty-six years old at the time of the incident and had been in the law enforcement field some eleven and one-half years. Appellant underwent considerable medical care including therapy. Medical records were introduced showing various entries such as probable compressive neuritis at the wrist, neuritis secondary nerve contusion and neuropraxia. Dr. Younger felt that Appellant had "a reflex sympathetic dystrophy." Three stellate ganglion blocks were performed by infections at the bottom of the neck on the left side, with little relief. Stellate ganglion was described by one doctor as "a relay station in

the sympathetic nerves." The evidence showed that the Appellant also complained of stiffness in the neck radiating "to the wrist and hand." Dr. Mallams found restricted range of motion in the neck and recommended cervical traction which was done. Some consideration was given to performing a sympathectomy which involves cutting out a sympathetic nerve that is responsible for reflex sympathetic dystrophy. Dr. Finn also diagnosed Appellant as having reflex sympathetic dystrophy (RSD) with probable involvement of the seventh and eighth cervical nerve roots. Dr. Finn was a neurosurgeon specializing in surgery of the central nervous system and a minor specialty in complex disorders of the spine. He stated that a nerve is "a bundle of prolongations of nerve roots." He stated that nerve root seven out of the cervical goes to the middle finger and the tricep muscle. Nerve root eight goes to the little finger. He stated that nerve root eight comes out of each side of the spinal cord and those on the left side serve the left side of the body. Dr. Finn found decreased sensation in the left sixth, seventh and eighth cervical and the first thorasic nerve root distribution. His impression was that Appellant may have had a dysfunction of one or more cervical nerve roots; either cervical disk herniation or some kind of reflex sympathetic dystrophy. Testimony was also that RSD usually follows a nerve injury and that Appellant's symptoms were related to his injury.

## POINTS OF ERROR

Appellant's brief asserts nineteen points of error but are simplified by lumping the first six points together for argument.

■ Points of Error Nos. One through Six assert the trial court committed error in its charge to the jury in regard to the existence of the general injury claimed by the Appellant.

Appellant's whole case rested on the fact that his injury resulted in damage to his sympathetic nervous system. The Appellant pleaded and sought only a general injury recovery. It differs from the situation found in *Texas Employers' Insurance Association v. Espinosa*, 367 S.W.2d 667 (Tex.1963), where the court stated the injured worker's "pleaded theory ... of compensation for a total and permanent incapacity to work *was not that he had originally received an injury affecting his body generally*," but that his loss of use of his eye extended to and affected his right eye and body generally. [Emphasis added].

There was evidence, if believed, that Appellant's condition was a result of the accident and had affected his neck, shoulder, arm, hand and fingers, not by the loss of use of his hand but by damage to his reflex sympathetic nerves. In addition, the site of the trauma and its immediate effects are not, however, necessarily determinative of the nature and extent of the compensable injury. *Western Casualty and Surety Company v. Gonzales*, 518 S.W.2d 524 (Tex.1975). Since the Workers' Compensation Act is a remedial statute, it has long been held that it should be liberally construed in favor of the worker. *American Mut. Liability Ins. Co. v. Parker*, 191 S.W.2d 844 (Tex.1945).

## THE COURT'S CHARGE

We set out verbatim the trial court's issues as submitted to the jury:

JURY QUESTIONS        ANSWERS

1. Did plaintiff receive a general injury on or about January 7, 1986?
   (Answer "Yes" or "No")
   "General Injury" means an injury, as previously defined, to the left hand, arm, neck and body as a whole. If plaintiff's injury is confined to his left hand below the elbow, it cannot be a general injury.

               1.     No

If he did, answer No. 2 and 3

2. Was the injury a producing cause of any total incapacity?
   (Answer "Yes" or "No")
                 2.     _____

If it was, answer No. 2A and 2B

2A. Find the beginning date of total incapacity. (By stating month, day, and year)   2A.   _____

2B. Find the duration of total incapacity. (By answering "Permanent" or stating the ending date)   2B.   _____

3. Was the injury a producing cause of any partial incapacity?
   (Answer "Yes" or "No")

3. _____

If it was answer Nos. 3A, 3B, and 3C.

3A. Find the beginning date of partial incapacity. (By stating month, day, and year)   3A. _____

3B. Find the duration of partial incapacity. (By answering "Permanent" or stating ending date)   3B. _____

3C. Find plaintiff's average weekly earning capacity during partial incapacity. (By stating dollars and cents)   3C. _____

4. Did plaintiff receive an injury to his left hand on or about January 7, 1986? (Answer "Yes" or "No")
   4.   Yes

If he did, answer No. 5 and 6

5. Was the injury a producing cause of any total loss of use of Plaintiff's left hand? (Answer "Yes" or "No")
   5.   No

If it was, answer No. 5A and 5B

5A. Find the beginning date of total loss of use. (By stating month, day and year)   5A. _____

5B. Find the duration of total loss of use. (By answering "Permanent" or by stating the ending date)   5B. _____

6. Was the injury a producing cause of any partial loss of use of Plaintiff's left hand? (Answer "Yes" or "No")
   6.   Yes

If it was, answer No. 6A, 6B and 6C

6A. Find the beginning date of such partial loss of use. (By stating month, day, and year)   6A. JAN 7, 1986

6B. Find the duration of partial loss of use. (By answering "Permanent" or stating the ending date)   6B. Permanent

6C. Find the percentage of such partial loss of use. (By stating a percentage)   6C.   33%

We first look to the additional definition the trial court added under Question No. One as to "injury." The trial court had already, in the court's charge, under "Definitions", defined "INJURY" as meaning:

[D]amage or harm to the physical structure of the body and such diseases or infections as naturally result therefrom or the excitement, acceleration or aggravation of any disease, infirmity or condition, previously or subsequently existing, by reason of such damage or harm.

The trial court then sought, on its own, to add the word "general" to Question No. One and attempted then to explain by instruction, under the question, what a general injury was:

" 'General Injury' means an injury, AS PREVIOUSLY DEFINED, to the left hand, arm, neck and body as a whole. If plaintiff's injury is confined to his left hand below the elbow, it cannot be a general injury."

We find that the court committed error not only as to the wording of the Question No. One by adding the word "general" but then giving an additional instruction as to what "general injury" meant. This constituted a comment on weight of the evidence and informed the jury of the effect of the answers. We note that the Appellee, in his statement to the jury, referred to the fact that if the jury found a general injury as the Appellant wanted, that this would mean he got more money. In addition, the trial court improperly put the burden of proof on the Appellant to prove by a preponderance of the evidence that his injury was not confined to his left hand below the elbow. Appellant was claiming only a general injury, and it was the Appellee that was seeking to limit the recovery to a specific member.

We sustain those points of error asserting improper wording of Question No. One, and the definition submitted in conjunction with it. We overrule those points of error that ask that we find as a matter of law that Appellant suffered a general injury.

■ Appellant, by points of error, complains about the trial court's submission of questions pertaining to confinement of the injury to a specific member. Appellee tendered issues as to total and partial loss of use of the left hand; extension and/or confinement issues to the left arm at or above the elbow as well as below the elbow. The trial court did not give the requested issues.

Appellee, in its brief, cites cases for authority that it was Appellant's burden to prove that the injury to his hand extended to and affected other parts of his body, citing *Texas Employers' Insurance Association v. Eskue*, 574 S.W.2d 814, 816 (Tex.

Civ.App.—El Paso 1978, no writ). That case does not apply in the present situation because in the *Eskue* case, the worker had pled that the injury to a specific member had resulted in a general injury. The Appellee cites *Travelers Insurance Company v. Marmolejo*, 383 S.W.2d 380 (Tex.1964) for the proposition that proof of pain is insufficient in law to show an extension of a specific injury. This is true, but the Court also stated in the *Marmolejo* case: "While the allegations of the petition might be broad enough to include an original general injury, NO ISSUE SUBMITTING THAT THEORY WAS GIVEN OR REQUESTED." [Emphasis added].

In the instant case, we find that it was tried by plaintiff as a general injury asserting damage to the sympathetic nervous system which consisted of nerves that ran from the spine, through the neck, down the left side to his fingers; all of which resulted from an initial impact or trauma to the left hand and wrist.

The Appellee was seeking a confinement or limitation of the Appellant's claim to a specific injury. Appellee's tendered confinement issues were inferential rebuttal issues prohibited by Rule 277 of the Texas Rules of Civil Procedure. The trial court in the instant case merely unconditionally submitted the cluster of issues pertaining to an "injury to the left hand" and whether such injury resulted in total or partial use of the left hand. This was improper and in error under the previous Texas Supreme Court holdings in *Select Insurance Company v. Boucher*, 561 S.W.2d 474 (Tex. 1978) and *Burns v. Union Standard Insurance Company*, 593 S.W.2d 309 (Tex. 1980).

We interpret the *Boucher* case as holding that when the worker only seeks a total and permanent recovery under a general injury (but not any partial recovery) and the insurance company pleads as a defense partial incapacity, the submission of partial issues would be improper. This is because they would be inferential rebuttal issues prohibited by Rule 277 of the Texas Rules of Civil Procedure. The insurance company would, however, be entitled

to a properly worded instruction as to "partial incapacity." However, it seems if the worker pleads specifically (or for general relief) for total and permanent incapacity, then issues on total and partial may be submitted. *Boucher; Archuleta v. International Insurance Co.*, 667 S.W.2d 120 (Tex.1984). The dual submission of total and partial would seem to be only at plaintiff's option until you read *Burns v. Standard Insurance Company*, 593 S.W.2d 309 (Tex.1980), which allowed disjunctive submission even though the worker pled and sought only total and permanent disability for a general injury. The issue as submitted and approved in the *Burns* case was:

'Do you find from a preponderance of the evidence that Plaintiff ... received an injury on or about September 30, 1974, which included her hip and back, or was such injury confined to her left foot and leg below the knee?'

'If you find from a preponderance of the evidence that such injury included her left hip and back, you will answer 'It included her hip and back;' otherwise you will answer 'It was confined to her left foot and leg below the knee.'

*ANSWER: 'It was confined to her left foot and leg below the knee.'* [Emphasis added].

The plaintiff in the *Burns* case contended error because the confinement issue phase was an inferential rebuttable issue. She urged that since she had only pled for a general injury, she was prohibited from recovery on a specific injury. The case of *Banks v. Millers Mutual Fire Insurance Company of Texas*, 476 S.W.2d 768 (Tex. Civ.App.—Texarkana 1972, no writ) supports this argument. However, our Supreme Court has now apparently held, by its opinion in the *Burns* case, that it is not error to use disjunctive submission of issues to determine whether the incapacity was due to general injury on whether it was due to a specific injury.

Neither the *Boucher* case nor the *Burns* case decisions save the trial court in our case because the trial court did not submit

the defense of confinement by instruction nor by disjunctive submission.

The trial court therefore committed error in the submission of the specific injury issues. Since the case must be returned to the trial court for retrial, we have not discussed Appellant's remaining complaints as to wage rate and credit for compensation paid. We assume that if those matters were not properly proved at the first trial, that they will be properly proved on retrial.

The judgment of the trial court is reversed and the case is remanded for a new trial consistent with this opinion.

OSBORN, Chief Justice, dissenting.

I concur in part and dissent in part.

The claimant plead an injury to his left hand, left arm, neck and body as a whole. He did not plead that any specific injury extended to and affected the body as a whole as to make a specific injury into a general injury. The record reflects that he only proved a specific injury to his left hand and wrist. If that injury did not extend to and affect the body as a whole, there was no issue for the jury as to a general injury. Mr. Mayes' testimony with regard to the injury was as follows:

'A. They were shoving at me and I still had a hold of his shirt. That is when the door got shut on my wrist.

'Q. That would be your left wrist?

'A. Left wrist, yes, sir. About that time I heard some officers come up behind me and with their help and mine, I was able to extricate myself from the door.

'Q. But they actually slammed the door on your hand?

'A. Yes, sir.

.    .    .    .    .

'Q. Okay. Now, it was about the 7th of January when you got your hand mashed in the door; right?

'A. Yes, sir.

.    .    .    .    .

'Q. Your hand was injured. You agree with me there?

'A. Yes.

.    .    .    .    .

'Q. But for a year and a half—I want to try to understand the pain. As far as you know, the pain for the first year and a half, if you moved your finger, it would bother you up to about mid forearm area; is that right?

'A. Up to my elbow, yes.

'Q. All right. Just below your elbow?

'A. Yes.'

He then testified that after a year and one-half when he moved his hand, the pain would radiate on up into his arm and the side of his neck.

The report from Dr. Younger, which claimant's counsel read to the jury, reflected a diagnosis of reflex sympathetic dystrophy which the doctor said: "I felt his injury is mostly likely related to his original wrist injury...."

The testimony which the claimant offered from Dr. Finn, a neurosurgeon in Dallas was as follows:

'Q. Have your reviewed your file before the deposition today?

'A. Yeah.

'Q. Do you recall specifically Mr. Mayes giving his history to you, what his complain [sic] was?

'A. Pain in the left upper extremity.

'Q. When you say left upper extremity, what do you recall?

'A. His left arm.

'Q. Left arm?

'Q. Arm and hand.

.    .    .    .    .

'Q. What were his primary complaints to you at the time that you saw Mr. Mayes?

'A. He was complaining of numbness in his left hand and left arm, especially between the ring and middle finger, and also pains of a burning nature radiating from his hand to his arm.

'Q. Up his arm?

'A. Up his arm. And also says he has some pain in the left side of his neck.

'Q. On evaluation or on your examination of him, did you find that his neck had a full range of motion?

'A. Yes.

'Q. And it was essentially non tender?

'A. Correct.

'Q. So if there was any problem with his neck it was very minor?

'A. Right.'

Dr. Finn also made a diagnosis of reflex sympathetic dystrophy. And when asked about that diagnosis on the second deposition said:

'Q. So there is still a question today whether or not he has RSD?

'A. That's correct.

'Q. All right. And did I gather whether his symptoms are related to his initial hand injury in 1986?

'A. I remain fairly convinced that his symptoms are secondary to his injury.'

.     .     .     .     .

'Q. Doctor, that's assuming again that there is no intervening incident that he may have caused other damage to his arm or neck; is that right?

'A. That's correct.

'Q. I mean all you've been given is one set of facts, is that I've had that hand injury and therefore pain developed eventually?

'A. Right.'

In considering these facts, we must necessarily recognize that an injured worker does not establish his right to a judgment for a general incapacity by merely showing that a specific injury has affected the body generally and thereby caused incapacity. He must go further and obtain a finding that his incapacity was caused by an extension of the injury to some part of the body other than a specific member. *Travelers Insurance Company v. Marmolejo*, 383 S.W.2d 380 (Tex.1964). Justice Norvell writing for the court in *Texas Employers' Insurance Association v. Espinosa*, 367 S.W.2d 667 (Tex.1963) said: "Specific injuries like all bodily injuries have their painful aftermaths and like undesirable consequences, but mere proof of this is insufficient in law to show an extension of a specific injury." The opinion notes that subjective complaints of pain and headaches following a specific injury do not establish an extension of the specific injury

so as to affect the body generally. More recent cases also hold that pain alone from a specific member of the body extending to other areas of the body does not change the injury from a specific injury to a general injury. *Western Casualty and Surety Company v. Gonzales*, 518 S.W.2d 524 (Tex.1975); *Gallegos v. Truck Insurance Exchange*, 546 S.W.2d 667 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.).

The only trauma which Mr. Mayes sustained was to his hand and wrist. All of his complaints to the various doctors were with regard to the injury to his hand and wrist and the pain which radiated from that injury. The diagnosis of reflex sympathetic dystrophy is one of a condition marked by pain and swelling in a limb. 3 Schmidt, *Attorney's Dictionary of Medicine*, at R–50 (1989). There is no proof of a general injury and since the claimant did not plead that any specific injury extended to and affected the body generally, I find no harm in a question to the jury which inquired about a general injury. Without proof to raise an issue about a general injury, any error in the first series of issues was harmless error. Therefore, I dissent from that part of the majority opinion which sustains Points of Error Nos. One, Two, Three and Six.

I concur in that part of the majority opinion which holds that the court should not have submitted inferential rebuttal issues, and if such issues were raised, the trial court should have followed the holding in *Burns v. Standard Insurance Company*, 593 S.W.2d 309 (Tex.1980), and submitted disjunctive issue. But, again I conclude that any error was harmless, just as the court did in *Burns*. The only difference being that in this case, the claimant had already been paid more in weekly compensation than he was entitled to recover under the jury's verdict.

I would affirm the judgment of the trial court.