## JOHN POWERS v. EDDY'S BAKING COMPANY AND ANOTHER.

112 N. W. (2d) 625.

December 15, 1961—No. 38,300.

*McLeod & Gilmore,* for relators.
*Samuel Saliterman,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Certiorari to review a decision of the Industrial Commission wherein it determined that John Powers, employee-respondent, had sustained injuries in the course of and arising out of his employment with Eddy's Baking Company, employer-relator, resulting in 15-percent permanent

partial disability to his left ear; a 7.5-percent permanent partial disability to his right ear; and a back disc injury. The commission awarded the employee compensation for temporary total disability due to his back injury from September 20, 1955, to September 26, 1958; October 5, 1958, to October 11, 1958; and April 3, 1959, to October 3, 1959, a total of 85 weeks. It further awarded him compensation for 14.23 weeks for disability to his ears, together with compensation for medical expenses paid or incurred as a result of the accident. It reserved decision on the extent of permanent partial disability to the employee's back.

A memorandum attached to the decision set forth the following:

"The weight of the evidence in this case indicates that the employe's disabilities, to both hearing and back, were caused by his substantial accident of September 20, 1955. He had no trouble before, and he had trouble from then on. As Dr. Fink and Dr. Garten have testified to, the accident is the most logical cause. Dr. Cabot's attributing this man's hearing difficulties to a dental ailment lacks any substantial foundation. His testimony negativing the accident causing the disability is most weak.

"There is also no other explanation for the man's back difficulties. We find little reason to doubt his veracity. * * * the employe's application for employment negativing his difficulties must be considered in the light of his desperation for work.

"We find it difficult * * * to determine the man's exact periods of temporary total disability. We therefore have allowed only for the periods in which the evidence is clear and substantiated."

On appeal the employer and its insurer contend that (1) the evidence fails to support the finding that the employee suffered a 15-percent permanent partial disability to his left ear and a 7.5-percent permanent partial disability to his right ear as a result of the accident; (2) the evidence does not support the finding that the employee suffered a back disc injury; (3) the evidence fails to support the finding that the employee suffered temporary total disability for a period of 57 4/6 weeks between September 20, 1955, and September 26, 1958.

The facts are as follows: The employee, presently 38 years of age,

was employed as a driver-salesman trainee by Eddy's Baking Company on September 20, 1955. On that date, while standing on his employer's panel truck in the course of his employment, and as the truck rounded a curve at approximately 24 to 28 miles per hour, he fell backwards therefrom, striking his back and head on the pavement. Immediately thereafter he was attended by Dr. J. P. Spano who directed that he be confined to a hospital for several days for examination and treatment. After release from the hospital he resumed work for the employer but was found unsuitable for such employment and discharged therefrom after about 1½ days' work. Thereafter, for 4 or 5 months, he continued to receive treatment from Dr. Spano for his injuries.

With reference to his loss of hearing, the employee testified that following the accident he had noticed a ringing in his ears which had remained almost constant since that time; that about 5 or 6 months after the accident he began to notice that he was having trouble with his hearing. The evidence disclosed that in other statements after the accident he expressed the recollection that he had first noticed loss of hearing in the fall of 1957; that he had advised Dr. Clyde Cabot that he had first noticed it about a year after the accident; and that in May of 1958, when he was examined by Northwest Industrial Clinic in connection with an application for a position as a truck driver, he had not disclosed that he was suffering from any defects in his hearing. He explained that his failure to mention this at the time was because of his fear that if it were disclosed he might not be employed.

Dr. J. L. Garten testified that he had examined the employee on November 3, 1958, and from such examination was of the opinion that the employee was suffering a loss of hearing in the left ear of about 52 percent and in the right ear of about 42 percent. He expressed the opinion that trauma due to the accident was a possible cause of this disability. Dr. Leo Fink testified that he had examined the employee on May 1, 1959, at which time he had found a loss of hearing in both of employee's ears and estimated an overall loss of hearing in both ears of 13.7 percent. He expressed the opinion that such loss was definitely due or related to the accident. He conceded that if in May 1958, at the time of the employee's application to Northwest In-

dustrial Clinic, no loss of hearing was present, the present disability in this respect would not be due to the accident.

· Dr. Clyde Cabot testified that on December 5, 1958, he found a 26-percent loss of hearing in the employee's left ear and 7½-percent loss of hearing in his right. He expressed the opinion that this may have been due to the accident although it might have been caused by other factors.

The employee testified that, immediately following the accident, his back was sore and stiff and had remained so throughout his treatment by Dr. Spano; that later when he took various jobs for other employers on these occasions his back would pain him so much that he was often forced to leave his employment and ultimately to quit these jobs because his back became worse; that the pain seemed to be located in the center of his back and extended downward through his legs; that it felt like electric shocks were going down into his legs from this source. He admitted on cross-examination that he had not sought medical attention for his back after he stopped seeing Dr. Spano until some 2 years and 6 months after the accident.

Dr. Morris Cable testified that he had examined the employee on August 20, 1958, at which time the employee had advised him that he was having difficulty with his back and had been unable to do heavy work because of it from the time of the accident on September 20, 1955; that on October 5, 1958, he had directed that the employee be hospitalized and that from that date until October 11, 1958, the employee had remained in the hospital for various tests; that as a result of such tests he had determined that the employee was suffering from a mild ruptured disc between the first and second lumbar vertebrae and a more moderate ruptured disc between the fifth lumbar vertebra and the first sacral segment; that later, when the pain did not decrease, he had recommended that the employee undergo surgery on his back, and that on April 16, 1959, such surgery was performed by Dr. Harvey O'Phelan. Dr. O'Phelan, an orthopedic specialist, testified that he first saw the employee on April 8, 1959, and performed surgery upon him on April 16, 1959, at which time he found a degenerated disc in the back but no rupture or prolapse. He expressed the opinion that the accident could have been a contributing cause of the condition

which he found. Upon cross-examination, he admitted that if the employee had performed heavy work for some time after the accident without pain or difficulty there would have been no relationship between the accident and the back condition which was found at the time of the surgery.

Dr. M. Z. Goldner testified that on December 8, 1958, at the request of the employer he had examined the employee and then determined that the latter did not have a ruptured disc but that there was some degeneration of the vertebrae in his back. He expressed the opinion that the employee was able to work. His report indicated that the employee had advised him that he (the employee) experienced severe headaches and a ringing in his ears immediately following the accident which had continued to that time and that while he was working for various employers subsequently he had noticed pain in his lower back, particularly when he was bending or lifting. Dr. Goldner estimated that the employee had a permanent partial disability of his spine of about 15 percent and testified that the pain suffered by the employee was probably caused by some injury to the disc without actual prolapse and that the accident of September 20, 1955, was the cause of such pain.

The commission determined that from September 20, 1955, to September 26, 1958, the employee had suffered loss of employment totaling 57 4/6 weeks because of the accident. With respect to his employment during this period the record indicates the following: From the approximate date of the accident until May 31, 1956, the employee worked for Stoker Service Company as a welder. From June 4, 1956, to July 13, 1956, and from August 6, 1956, to November 7, 1956, he worked for Standard Iron & Wire Works as a welder. Between November 7, 1956, and December 10, 1956, he was again employed by Stoker Service Company as a welder. From December 10, 1956, to September 26, 1957, he was again employed by Standard Iron & Wire Works as a welder. From September 26, 1957, to November 1, 1957, he was employed by Midwest Coast Transport Company as a truckdriver. From November 17, 1957, to December 8, 1957, he was employed by Laco Pipe Contractors, Inc. Thereafter, he remained unemployed until May 23, 1958.

From May 23, 1958, until June 3, 1958, he was on probationary employment with Indian Head Truck Lines, but was not accepted by this company because of his motor vehicle accident record. From June 1, 1958, until July 1, 1958, he was again employed by Stoker Service Company as a welder. From July 3, 1958, to November 11, 1958, he was employed by Jacobson and Hammermill Company as a welder, and was ultimately discharged by this company for absenteeism. For some time prior to this date he had been having trouble with his back. This ultimately led to the surgery described.

The above is indicative that after the accident the employee had worked almost continuously until December 8, 1957. As to the short intervals during which he was not employed in this period, the evidence indicates various reasons therefor not attributable to the accident—his voluntary termination of employment to accept other employment; completion of work for which he was employed; damage to tractor belonging to his employer; and absenteeism. For the period from September 20, 1955, to September 26, 1958, the evidence indicates total loss of employment of 24 weeks which may fairly be attributable to the accident and which conforms with the employee's testimony that his total loss of time from employment in this period amounted to 5 or 6 months.

■ Our first function is to determine whether the evidence is sufficient to sustain the commission's findings that the employee has suffered a loss of hearing of 15 percent in his left ear and 7.5 percent in his right ear; and a permanent disability to his back, all attributable to and arising out of the accident which he sustained on September 20, 1955, while in relator's employment. 21 Dunnell, Dig. (3 ed.) § 10426(12). When reference is made to the facts outlined herein and to expert testimony of various medical experts, it seems clear that the evidence amply supports such findings. It is true that some of the medical experts were not quite definite and positive in their opinions as to the relationship between the employee's disability and the accident which he sustained, but when their testimony is considered in its entirety in the light most favorable to the employee, it is more than sufficient to support the commission's determination. We have frequently held that absolute certainty in the opinion of expert medical

witnesses is not essential to support a finding as to the relationship between an industrial accident and subsequent disability found to exist therefrom. Hiber v. City of St. Paul, 219 Minn. 87, 16 N. W. (2d) 878; Mattfeld v. Nester, 226 Minn. 106, 32 N. W. (2d) 291, 3 A. L. R. (2d) 909; Weller v. Northwest Airlines, Inc. 239 Minn. 298, 58 N. W. (2d) 739. We quoted with approval from 20 Am. Jur., Evidence, § 768, in the Hiber case (219 Minn. 93, 16 N. W. [2d] 881):

"* * * He [an expert witness] is not required to speak with such confidence as to exclude all doubts in his mind, but may render his testimony in the form of an estimate of opinion, couched in expressions that fall short of absolute conviction of accuracy. Such qualification affects merely the probative force of the testimony."

Applying these principles here compels affirmance of the commission's decision on the issues above specified.[1]

■ However, we cannot escape the conclusion that the evidence falls short of sustaining the commission's findings that, between September 20, 1955, and September 26, 1958, the employee had lost 57 4/6 weeks of employment because of disability due to the accident. Almost immediately after the accident he resumed work and continued therein up until December 8, 1957, with the exception of a few brief intervals of unemployment not attributable to the accident. With reference to these occasions there is nothing to support a finding that such loss of time was related to the accident. As indicated above, evidence was submitted that such loss of time was due to a number of other factors—his desire for different employment—his poor motor-vehicle record—his damaging of an employer's motor tractor—and absenteeism, not attributable to disability arising from the accident. At no time during the period involved did he advise any employer that he was leaving because of his back injury. In fact, the record establishes that on a number of occasions he later resumed employment with the same employer and in the same type of work.

The record does establish that subsequent to December 8, 1957, the

---

[1]With reference to the extent of disability to employee's back, no finding thereon having been made by the commission, there is no question to be determined by this court in connection therewith.

employee was having substantial trouble with his back and that the pain he suffered therein made it difficult for him to perform any work which required lifting objects or bending. The records of Jacobson and Hammermill Company, for whom he worked a short time during this period, established that he complained to this employer that he was suffering pain in the back. His ultimate discharge by this company on November 11, 1958, was partly because of absenteeism attributable to his back condition. In August 1958 he commenced receiving medical attention for his back, and on April 16, 1959, surgery was performed to correct a degenerated intervertebral disc therein. Medical testimony linked this disability definitely to the accident of September 20, 1955. When all such factors are taken into account, together with the testimony of the employee, there can be little doubt but that his unemployment for the 24 weeks indicated was directly attributable to the accident. Based thereon, the commission should have determined that the employee's loss of employment between September 20, 1955, and September 26, 1958, attributable to the accident, did not exceed a total of 24 weeks, rather than the 57 4/6 weeks allowed therefor.

Remanded with directions to modify the decision of the Industrial Commission in accordance with this opinion.

Respondent is allowed $250 attorney's fees.