**STATE of Minnesota, on Behalf of Judith HASTINGS, Respondent,**

v.

**Dale DENNY, Appellant.**

**No. 49647.**

Supreme Court of Minnesota.

July 3, 1980.

Schermer, Schwappach, Borkon & Ramstead and James W. Buckley and Barbara Heck, Minneapolis, for appellant.

Robert W. Johnson, County Atty., Coleen Brady Johnson, Asst. County Atty., Anoka, for respondent.

Heard before PETERSON, KELLY and WAHL, JJ., and considered and decided by the court en banc.

KELLY, Justice.

Defendant was found by a jury to be the natural father of plaintiff's daughter in a paternity action. He later brought a post-trial motion for judgment notwithstanding the verdict or for a new trial. The Anoka County District Court denied the post-trial motion and ordered judgment for plaintiff. Defendant appeals on the ground that trial court misconduct denied him a fair trial. We reverse and remand for a new trial.

Plaintiff gave birth to a daughter, Lareina, on February 19, 1975. Subsequently, plaintiff served a complaint and summons on defendant alleging that he was the father of the child, and asking that he fulfill his monetary obligations as the child's father. The record divulges no evidence that either a traditional or recently developed sophisticated blood test was administered to either party in this case.

At trial plaintiff testified that she lived with defendant from about the end of April to about the end of May 1974, during which time she regularly had intercourse with defendant; that she did not have sexual intercourse with any other man but defendant during April or May 1974; and that her last menstrual cycle before giving birth began May 15, 1974. Defendant testified that plaintiff and he had cohabited only until May 7 or 8, 1974, and categorically denied fathering plaintiff's child.

A defense witness, Meryl Reid, testified that he had intercourse with plaintiff in early May 1974 during a party at defendant's residence. After being impeached by the plaintiff's attorney during cross-examination by a prior inconsistent statement, Reid was additionally cross-examined by the court about the same statement.

The Minnesota Rules of Evidence authorize the examination of witnesses by the trial court. Minn.R.Evid. 614(b). This prerogative, however, should be exercised with great caution, particularly when the credibility of key witnesses is at issue. *See City of Minneapolis v. Canterbury*, 122 Minn. 301, 310, 142 N.W. 812, 815 (1913). This need for caution is based on the recognized extraordinary prestige of the trial judge. Thus, in order to secure a fair trial for the parties, the court should "refrain from any act, word, sign, gesture, or inflection of voice, the effects of which would be to emphasize a predisposition on the part of the court toward one side or the other in connection with the legal controversy." *Hansen v. St. Paul Ry.*, 231 Minn. 354, 361, 43 N.W.2d 260, 265 (1950). The restraint by the trial court is of unusually crucial significance in paternity cases, such as this one, where credibility of witnesses is at issue. *See State v. Hansen*, 173 Minn. 158, 161–62, 217 N.W. 146, 147–48 (1927). Thus, in this case, it would have been better practice for the court not to have engaged in interrogation that reflected on the credibility of a key defense witness in the presence of the jury. Since the court's conduct could have influenced the jury on such a closely contested issue as that arising on the facts of this case, we hold that defendant should be allowed a new trial.

We note, however, that had blood tests been administered to the parties in this case, resolution of the issue of paternity would not have depended so much on credibility of witnesses. Thus, there may have been no need for reversal, because the error, under those circumstances, may not have been prejudicial. We have repeatedly stated that recently developed blood tests are the most reliable means for making the determination of paternity more accurate and efficient. *See Benson v. LaBatte*, 288 N.W.2d 684, 686 (Minn.1979); *Wessels v. Swanson*, 289 N.W.2d 469, 470 (Minn.1979); *Hepfel v. Bashaw*, 279 N.W.2d 342, 347–48 (Minn.1979); *State ex rel. Ortloff v. Hanson*, 277 N.W.2d 205, 206–07 (Minn.1979).

*See also Ramsey County Public Defender's Office v. Fleming,* 294 N.W.2d 275 (Minn. 1980).

Although "blood tests in combination with statistical studies may have probative value in affirmatively establishing paternity," they inexplicably continue to be unused in many paternity cases such as the present case. *Hepfel v. Bashaw,* 279 N.W.2d at 347. This is true even though the trial court has authority under Minn.R. Civ.P. 35.01 to order a blood examination for a party where the blood relationship of a party is in issue. *See State ex rel. Ortloff v. Hanson,* 277 N.W.2d at 207.[1] Use of these blood tests may make trial unnecessary in many cases by facilitating settlement before trial. Thus, we strongly reiterate our belief that recently developed blood tests should be ordered whenever possible to obtain them in adjudications of paternity.

Reversed and remanded for a new trial.

---

1. The Minnesota Legislature has recently passed legislation concerning the use of blood tests at paternity hearings. Act of Apr. 23, 1980, ch. 589, §§ 12–13, 1980 Minn.Sess.Law Serv. (West) 970 (to be codified as Minn.Stat. §§ 257.62–.63). This legislation, which takes effect on August 1, 1980, *see* Minn.Stat. § 645.-02 (1978), provides in part that the trial court shall require blood tests in a paternity action upon request of a party, and that the refusal to submit to such tests is subject to sanctions within the jurisdiction of the court. The act also provides that the results of such blood tests are admissible in evidence weighed in accordance with evidence, *if available, of the* statistical probability of the alleged father's paternity.