Steven G. PARADISE, Appellant,

v.

The CITY OF MINNEAPOLIS et al., Respondents.

No. 50301.

Supreme Court of Minnesota.

July 3, 1980.

Charles J. Wagner, Mound, for appellant.

Robert J. Alfton, City Atty., and Frederick W. Spencer, Asst. City Atty., Minneapolis, for respondents.

Heard before ROGOSHESKE, SCOTT, and WAHL, JJ., and considered and decided by the court en banc.

WAHL, Justice.

Appeal from an order of the Hennepin County District Court, which dismissed the instant action on the ground that plaintiff's presentation of evidence failed to establish a right to relief. We reverse.

Plaintiff Steven Paradise commenced this assault and battery action to recover damages for injuries he allegedly sustained on July 16, 1976, when he was arrested for disorderly conduct by two Minneapolis policemen. Plaintiff claims that his arrest and subsequent detention involved the use of unreasonable force. Defendants are the City of Minneapolis, the City's police chief, and the two arresting officers. The matter came on for trial June 4, 1979, at which time a jury was impaneled. Plaintiff's case consisted entirely of two witnesses: plaintiff, the principal witness, and his son, Paul Paradise.

On direct examination, plaintiff testified that on July 16, 1976, he arrived home from work around 5 p. m. and ate a small supper. About 7:30 p. m. he noticed a small crowd gathering in the alley outside his home. He left the house and approached the alley, where he saw two police cars and three officers. One policeman was in the process of arresting plaintiff's 16–year–old son, Paul, for illegally operating a minibike.[1] The other two officers were investigating a stolen car in one of the garages near plaintiff's home. Plaintiff asked the officer arresting his son "what the commotion was and why they were going to take him [Paul] downtown * * *." He discussed the matter with the policeman for five to ten minutes.

Plaintiff stated that "a little bit later" the two other officers (defendants herein) approached plaintiff and instructed him that, "You are out of line. Would you please be quiet or leave." Plaintiff claims that he responded, "You are not involved because I am talking to this other officer about the situation with my son." Shortly thereafter, the two policeman told plaintiff that he was going to be taken downtown. Plaintiff testified as follows regarding what occurred next:

Q. Did either of the officers tell you that you were under arrest?

A. I can't recall offhand if they did or not.

Q. What happened then?

A. They grabbed me and they pushed me up against the squad car.

Q. Did they handcuff you?

A. Not at the time, but pulled my arms behind me and pulled my arms forward. I said, "Why are you doing this to me? They says, "You are going downtown." And they cuffed

---

1. Specifically, Paul was arrested for operating a minibike without a driver's license, carelessly driving the motorized bike, driving without a license and driving an unlicensed vehicle.

me and threw me on the ground and then they cuffed me.

Q. Okay. Now, you are on the ground at this point. Were you on your back?

A. I was on my stomach.

Q. Did you strike the ground hard?

A. Yes, I did.

\*   \*   \*   \*   \*   \*

Q. How did you get up?

A. They pulled me up by the back of my arms and handcuffed me.

Q. How did they pull up you again?

A. I couldn't say because I am facing down, but my arms came up pretty hard. My shoulder is also sore.

Plaintiff was placed in the police car with the two officers. He claimed that the squad car proceeded to the corner of 15th and Adams Street, Northeast, where the vehicle was stopped. According to plaintiff, at that time one of the officers used foul language toward plaintiff and "backhanded" him in the mouth. Plaintiff was then taken downtown to the courthouse. He testified that, upon getting out of the squad car, he asked the officers to loosen the handcuffs because his left wrist was bothering him. In response, the handcuffs were allegedly tightened by one of the officers.

Plaintiff spent approximately two hours in jail before his release. After he returned home, at about 10 p. m., plaintiff complained to his wife that his left wrist was hurting him. Later that evening, he went to Metropolitan Medical Center, where a doctor discerned through an X–ray that plaintiff's left wrist was broken and applied a partial cast to the wrist. Plaintiff missed about 28 days of work due to this injury, which amounted to approximately $1,144 in lost wages. In addition, plaintiff stated that he experienced pain in the form of "very heavy throbbing" as a result of his broken wrist.

On cross–examination, plaintiff stated that after he arrived home on the day in question and before he talked with the policemen, he consumed two shots of brandy and two strong beers. He testified that at the time of the incident he was "feeling" the effects of the drinks and acknowledged that he was "under the influence of alcohol." Plaintiff admitted that he had been loud, had used profane language toward the policemen, and had not cooperated while being handcuffed. He agreed that the officers asked him twice to "be quiet" and that eventually the policemen had told him that he was going downtown because he wouldn't calm down and stop yelling. Further, plaintiff stated that neither while he was being fingerprinted nor at any time he was in jail did he complain about his wrists to any person.

Pursuant to questions of plaintiff's attorney, Paul Paradise described his father's arrest in the following manner:

Q. Did you see your father arrested?

A. Yes. They grabbed him and pulled his arms back, as he said.

Q. What did they do then?

A. Well, they got his arms back and pulled him back. I was wondering why they was doing it. There was no reason for it, there didn't seem to be. Then they pulled him back. They both grabbed him and pulled him back and threw him down, sort of like this, threw him on the ground and put the cuffs on. They just yanked him up and put him against the car.

\*   \*   \*   \*   \*   \*

Q. Did they lift him into the air then?

A. Right to his feet.

Q. What distance would that be that he was lifted from when he was on the ground until he was lifted up on his feet?

A. Four feet.

Q. What happened then?

A. Well, then they grabbed him and put him against the car and they were saying something and then they struck him the back.

At the close of plaintiff's trial, the district court, upon its own motion and pursu-

ant to a similar motion of defendant, dismissed the instant action because plaintiff had failed to establish a right to relief. As part of his findings of fact, conclusions of law, and order for judgment, the trial court reasoned that:

> Pursuant to Rule 41.02 [2] of the Rules of Civil Procedure for the District Courts, under the facts and the law, Plaintiff has shown no right to relief. No reasonable jury, under the facts presented by plaintiff could find for plaintiff and if the jury should so find the Court would be compelled to set such verdict aside as unreasonable. The Court orders plaintiff's claim dismissed for failure upon the facts and the law to show a right to relief.

Plaintiff appeals to this court.

■ The issue presented for our determination is whether the trial court erred in dismissing plaintiff's complaint. The trial court's dismissal of plaintiff's complaint under Minn.R.Civ.P. 41.02(2) is equivalent to a directed verdict as embodied in Minn.R. Civ.P. 50.01. Thus, the standards which are utilized in determining the propriety of directing a verdict are applicable in this case. *See, e. g., Hirman v. Rogers*, 257 N.W.2d 563 (Minn. 1977). These principles require the determination of whether, as a matter of law, the evidence is sufficient to present a fact question for the jury's consideration. In making this decision, the court must view the credibility of the evidence, and every inference which may fairly be drawn therefrom, in favor of the adverse party. *Zinnel v. Berghuis Const. Co.*, 274 N.W.2d 495 (Minn. 1979); *Stenzel v. Bach*, 295 Minn. 257, 203 N.W.2d 819 (1973).

2. Minn.P.Civ.P. 41.02 reads, in pertinent part, as follows:
> (2) After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.

3. Although plaintiff's complaint refers to the tort of assault as well as to that of battery, it is apparent that the essence of plaintiff's claim is based on battery. Indeed, the damages allegedly sustained resulted from the actual contact the officers had with plaintiff, and not from plaintiff's fear that he might be touched. Thus,

■ The substantive law applicable to this case is well settled. A battery[3] is defined as an intentional unpermitted offensive contact with another. *See, e. g., Schumann v. McGinn*, 307 Minn. 446, 240 N.W.2d 525 (1976); Prosser, *Torts*, § 9 (4th ed. 1971); JIG II, 501 G. Under Minn.Stat. § 629.32 (1978), a police officer is permitted to come in contact with an individual in the course of arresting and detaining him to the extent it is "necessary" to effectuate such arrest and detention. That statute states, in pertinent part, that:

> An arrest is made by the actual restraint of the person of the defendant or by his submission to the custody of the officer; *but he shall not be subjected to any more restraint than shall be necessary for his arrest and detention* * * *.[4]

(Emphasis added.) It is clear, then, that if the officers in this case used excessive force, their touching of plaintiff would be unpermitted and thus constitute a battery. Consequently, the salient question before the court is whether plaintiff's case in chief, when viewed in the light most favorable to plaintiff, provides a basis upon which a jury could reasonably conclude that the officers used more force than was necessary in arresting and detaining plaintiff.

■ We believe that the evidence reasonably supports a finding that the officers applied excessive force in performing their duties. Although plaintiff was admittedly uncooperative while being handcuffed, a

only the claim for battery will be discussed herein. *See Schumann v. McGinn*, 307 Minn. 446, 449 n. 2, 240 N.W.2d 525, 528 n. 2 (1976).

4. *See, also*, Minn.Stat. § 609.06(1)(a) (1978), which is part of the Criminal Code and states that:
> Reasonable force may be used upon or toward the person of another without his consent when the following circumstances exist or the actor reasonably believes them to exist:
> (1) When used by a public officer or one assisting him under his direction:
> (a) In effecting a lawful arrest; * * *

jury could reasonably determine that there was no need to apply the handcuffs and lift plaintiff from the ground in the manner described. Similarly, plaintiff's testimony regarding the officer's tightening of his handcuffs after he requested that they be loosened provides a reasonable basis for finding that unnecessary force was used. Whether these alleged acts of the officers were the proximate cause of the plaintiff's broken wrist is also a factual question for the jury and, in any event, if the force used by the officers is found to unnecessary, plaintiff would be entitled to at least nominal damages.[5] *See Prosser, supra.*

Finally, plaintiff's claim that he was struck in the face by one of the officers certainly constitutes reasonable evidence of a battery. Of course, this act did not cause plaintiff's broken wrist, but nevertheless it at least would support the award of nominal damages. *See id.*

Based on the foregoing, we conclude that the trial court erred in dismissing plaintiff's complaint. Accordingly, the decision of the trial court is reversed, and the case is remanded for trial.[6]

---

**5.** Additionally, in his complaint, plaintiff requests punitive damages against defendants. Although a municipality cannot be held responsible for exemplary damages, Minn.Stat. § 466.-04, subd. 1 (1978), no similar prohibition exists with respect to the liability of municipal employees and officers. *Wilson v. City of Eagan*, 297 N.W.2d 146 (Minn.1980). Thus it is possible that punitive damages could also be awarded in this case.

**6.** We note that, although we remand this case for further proceedings against all four defendants, we have serious doubts as to whether a claim for relief has been established against defendant Carl E. Johnson, the Minneapolis Police Chief. *See* 16 *McQuillin Municipal Corp.*, § 45.08 (3rd ed. 1979); *Jennings v. Davis*, 476 F.2d 1271 (8th Cir. 1973); *Stroeber v. Commission Veteran's Auditorium*, 453 F.Supp. 926 (S.D. Iowa 1977). Since no issue is raised on this appeal relative to the separate liability of Johnson, we trust that upon remand an appropriate motion and arguments will be submitted on this matter for the trial court's consideration.