**STATE of Minnesota, on Behalf of Sherry (Reynolds) ELG, Respondent,**

v.

**Jeffrey G. ERICKSON, Appellant.**

**No. C6–84–1288.**

Court of Appeals of Minnesota.

March 12, 1985.

860

Hubert H. Humphrey, III, State Atty. Gen., Robert W. Kelly, Washington County Atty., Donald Bruce, Asst. Washington County Atty., Stillwater, for respondent.

Philip B. Moosbrugger, St. Paul, for appellant.

Heard, considered and decided by SEDGWICK, P.J., and FOLEY and CRIPPEN, JJ.

## OPINION

SEDGWICK, Judge.

This is a contested paternity matter wherein defendant was found the father of Terry Lynn Reynolds. We affirm.

## FACTS

Plaintiff Sherry (Reynolds) Elg claims that on March 3, 1979, she had sexual intercourse with defendant Jeffrey Erickson. Pursuant to court order, blood samples were obtained.

At trial, Dr. Herbert Polesky, Director of the Minneapolis War Memorial Blood Bank testified via videotape that according to defendant's blood tests, his "paternity index" is 15.36. This means that 15 men would have to be randomly selected from the population at large and tested before one might expect to find another man with a genetic make-up consistent with his being the father of Terry Lynn Reynolds.

Dr. Polesky also converted this paternity index into a percentage, or a likelihood, of paternity. He did this by using the statistical device known as "Bayes' Theorem" which compares the likelihood of defendant's being the father of the child with that of a man selected by random from the general population. Dr. Polesky testified that defendant's likelihood of paternity is 93.9%. Defendant's expert, Dr. Berry, a statistician, agreed that use of Bayes' Theorem is an accepted tool in determining probabilities.

Dr. Polesky also testified that 95% to 97% of men who are falsely accused of being the father would be excluded by his test procedures. Defendant objected to all of this testimony at trial.

The jury returned a verdict finding defendant the father of Terry Lynn Reynolds.

## ISSUES

1. Did the trial court err in admitting Dr. Polesky's testimony concerning the paternity index?

2. Did the trial court err in admitting Dr. Polesky's testimony concerning the likelihood of paternity?

3. Did the trial court err in admitting Dr. Polesky's testimony concerning the assertion that falsely accused men are excluded in 95% to 97% of all cases by the blood tests?

## ANALYSIS

1. The supreme court and the legislature have consistently favored the use and admissibility of blood test results in determining paternity over the last several years. This includes the use of statistical probabilities derived from them.

Appellant contends that the paternity index figure should be excluded on a number of grounds, including insufficient evidence, relevancy, prejudice, invasion of the province of the factfinder, and Dr. Polesky's lack of credentials as a statistician.

■ The paternity index figure is clearly relevant since it has a tendency to show that appellant's paternity of the child is more probable than it would be without it. Minn.R.Evid. 401.

■ The figure does not invade the province of the factfinder since, under Minn.R. Evid. 704, an expert is allowed to testify by opinion or inference, even though that opinion or inference may embrace the ultimate issue to be decided by the trier of fact.

■ Appellant's objections concerning insufficient foundation and Dr. Polesky's lack of credentials as a statistician are without merit. Dr. Polesky is a specialist in immunohematology (blood). He arrived at the paternity index by inserting the blood test results into an accepted statistical formula called the product rule. He did not testify concerning the theory and derivation of the rule. He only testified concerning its application and use. One need not be a statistician to testify to this.

■ Appellant objects to Dr. Polesky's testimony regarding the paternity index figure on lack of foundation grounds because Dr. Polesky is unable to cite a study showing that each of the 15 gene systems tested is mutually independent of the others. However, Dr. Polesky testified that the gene systems are accepted as independent among experts in his field. Under Minn.R.Evid. 703 that testimony is adequate foundation for his later opinion.

■ Appellant's objection that the paternity index figure is more prejudicial than probative is also without merit. Minn.R. Evid. 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." The paternity index is clearly probative. It tells the jury how many other males would have to be tested in order to find one who has gene systems consistent with being the father of the child in question. Since the blood tests cannot conclusively prove paternity, that information is needed by the jury to determine how many other men could or could not be the child's father.

2. Appellant objected to the introduction of the "likelihood of paternity" figure on the same grounds that he objected to admission of the paternity index. For the same reasons discussed above the likelihood of paternity figure is relevant, does not invade the province of the factfinder, and Dr. Polesky is qualified to testify regarding it.

Appellant specifically challenges this figure as lacking foundation because he asserts the figure requires an invalid assumption be made before it can be obtained. Dr. Polesky testified that he must assume the mother had intercourse with one other male of similar fertility during the conception period. Bayes' Theorem requires that an assumption be made because without some assumption there is not enough data to make the statistical formula work.

Dr. Polesky, therefore, assumed the facts as presented by appellant, that respondent had intercourse with one other man during the conception period.

Contrary to appellant's assertion that this figure is clearly recognized as invalid, the joint AMA–ABA guidelines comments provide that, "While this (the assumptions made by Dr. Polesky) will not correspond to the facts in most cases of disputed paternity, it is a useful working hypothesis." *Present Status of Serologic Testing in Problems of Disputed Parentage*, 10 Family L.Q. 27 (1976).

■ Dr. Polesky clearly articulated the assumptions upon which he based his figure. His intent was to assist the jurors in interpreting the blood test results. Therefore, it is useful to the jurors and should not be excluded for lack of foundation.

■ Appellant next claims the figure is overwhelmingly more prejudicial than probative and therefore should be excluded. He cites two Minnesota *criminal* cases to support his contention: *State v. Carlson*, 267 N.W.2d 170 (Minn.1978); *State v. Boyd*, 331 N.W.2d 480 (Minn.1983). In these cases the statistical evidence was excluded because of the danger of undermining the presumption of innocence. That presumption does not attach to a civil paternity action.

3. Appellant objected to Dr. Polesky's assertion that falsely accused males are excluded in 95% to 97% of all cases by the blood tests. He objected to the admission of this statement on the same grounds as discussed above.

■ Since the blood tests cannot conclusively prove or disprove paternity, Dr. Polesky's opinion is helpful to the jury in determining the likelihood of defendant's being wrongly accused of being the child's father.

■ Dr. Polesky based this opinion on his experience as director of the War Memorial Blood Bank and more than 10,000 blood tests he has done. He certainly is qualified to give an opinion in this regard. Minn.R.Evid. 703.

■ Lastly, appellant argues that the jury will draw the wrong inference from the evidence; therefore, it is too prejudicial. This is without merit. Dr. Polesky did not mislead the jury regarding the meaning of this figure. Additionally, appellant had the opportunity to cross examine and rebut the evidence and further explain the figure to the jury.

## DECISION

We affirm the trial court.