**John BLOCK, Appellant,**

v.

**TARGET STORES, INC., a Minnesota Corporation, d/b/a Target, Respondent.**

**Nos. C6–90–179, C1–90–624.**

Court of Appeals of Minnesota.

Aug. 7, 1990.

Review Denied Sept. 28, 1990.

Mark A. Lund, Benjamin F. Gallagher, Paige J. Donnelly, Ltd., St. Paul, for appellant.

Timothy C. Godfrey, Eugene D. Buckley, Collins, Buckley, Sauntry & Haugh, St. Paul, for respondent.

Considered and decided by RANDALL, P.J., and FOLEY and KLAPHAKE, JJ.

## OPINION

FOLEY, Judge.

Appellant John Block commenced this negligence action against respondent Target Stores, Inc., a Minnesota corporation, d/b/a Target, to recover for personal injuries he sustained after falling from a skateboard in Target's Roseville store. The trial court dismissed the case after refusing to allow Block's expert witness to testify about the propriety of the flooring materials, lighting, and display practices of Target and the causal relationship between the flooring materials and Block's injury.

Block's subsequent motion for a new trial was denied. Target's motion for costs, disbursements, and attorney fees amounting to $22,259.27 was granted and that amount was assessed against Block and his attorneys. This appeal challenges the propriety of the denial of Block's motion for a new trial and the imposition of costs, disbursements, and fees. We reverse and remand.

## FACTS

On May 2, 1987, Block and his family went to the Target store in Roseville to purchase a skateboard for his son. They proceeded directly to the skateboard display, which consisted of three or four shelves of skateboards. Some of the skateboards were in boxes and others were unboxed. The unboxed skateboards had soiled wheels and tops. No signs were posted in the area of the display prohibiting testing, so Block decided to try out a few boards to find one sturdy enough to support his son.

Block tested three skateboards. He quickly determined that the first two were not strong enough. The third board, however, appeared bigger and stronger than the first two. Block placed his right foot on the board. The board did not give under his weight, so he decided to place his left foot on the board as well. Block put his left hand on a shelving unit for support as he lifted his left foot from the floor to stand across the board. The skateboard then slid out from underneath Block sideways causing him to fall down. He suffered a broken leg as a result of the fall. Block later said he realized the skateboard might not stay in place when he tested it out, but he testified that he had no idea the skateboard might slide out from beneath him sideways as it did.

Block subsequently commenced this action against Target. He claimed Target (1) installed flooring in the area of the skateboard display that was too slippery for safe skateboard testing; (2) failed to warn customers of the potential hazards associated with testing skateboards on the premises; (3) failed to adequately illuminate the area of the skateboard display to allow customers to evaluate the slipperiness of the flooring; and (4) failed to place the skateboards in a secure display despite knowledge of the danger that accompanied skateboard testing.

Roger Keiser, an architect registered in the State of Minnesota, was called to testify on Block's behalf as an expert witness. Keiser received his architectural degree from the University of Minnesota in 1966 and has practiced architecture for 23 years. According to Keiser, in a typical building project, the architect coordinates and designs everything that goes into the building. Keiser stated that the architect usually has "complete control as to what goes into that building."

According to Keiser's testimony, architects rely on good judgment, common sense, safety factors, and the function of the building when determining the type of flooring to install in a building. Keiser testified that two general types of flooring exist. Category one flooring, which has no special slip-resistant characteristics, and

category two flooring, which has a rougher, more abrasive finish, and is less slippery. Block, who sells and installs flooring and carpeting in his business, earlier testified that the flooring near the skateboard display on the date of the accident was vinyl asbestos tile. Keiser stated that vinyl asbestos tile is category one flooring.

Keiser testified that he accompanied Block to the Target store in Roseville on July 16, 1988 to investigate the scene of the accident. Keiser examined the floor in the area of the skateboard display, took light measurements with a light meter, and examined the manner in which the boards were displayed. Keiser stated that on the day of the investigation the flooring near the skateboard display was category one type flooring. Keiser also testified that the skateboards were displayed on open shelving, unboxed, and unsecured.

Based on his investigation and experience, Keiser stated he had reached some conclusions concerning the area he examined. Keiser testified that he would have recommended Target install category two type flooring with slip resistant characteristics throughout the store, but especially in the area of the skateboard display. Target objected to this response, the objection was sustained, and the response was stricken insofar as it referred to the skateboard display.

After striking Keiser's response from the record, the trial court questioned him at length. The court then called a recess and, following an in-chambers discussion, ruled that Keiser was not qualified to render any expert opinion as to the state of the flooring, lighting, or other conditions of the skateboard display area at Target.

The trial court then permitted Block's counsel to make an offer of proof. Block's counsel stated Keiser would have testified that the type of flooring used by Target was unreasonably dangerous for testing skateboards; that had Target used category two flooring, the accident would not have occurred; and that the wheels of a skateboard do not place much friction on the floor, thus skateboards are more susceptible to sliding out from under someone sideways than other instrumentalities.

Further, Keiser would have stated that the lighting in the area of the display was insufficient to warn customers about the slipperiness of the floor. Finally, Keiser would have testified based on his years of experience as an architect, that if Target had insisted upon using category one flooring in the skateboard display area, he would have recommended the store post a warning sign indicating the flooring was hazardous for testing skateboards. Alternatively, Keiser would have recommended that the skateboards be placed in a cabinet inaccessible to the customers.

Following this offer of proof, the parties returned to the courtroom and Keiser was asked by the trial court whether he could tell the jury to a scientific or mathematical certainty that Block would not have fallen had category two type flooring been used. Keiser responded that he could not, and the trial court told Keiser he was of no help to the jury. Block's counsel then attempted to elicit an opinion from Keiser based on a reasonable degree of architectural certainty, but the trial court refused to allow Keiser to testify, stating: "Architects cannot testify on that question." Block rested his case at that point and Target moved for dismissal.

The trial court granted Target's motion, concluding as a matter of law that Target had not been negligent. Additionally, the court stated that even if Target had been negligent, no evidence of any causal connection between Block's injury and that negligence had been or could be established.

The trial court subsequently denied Block's motion for a new trial and granted Target's motion for costs, disbursements, and fees. In its memorandum denying Block's motion for a new trial, the court stated that as a matter of law Block's negligence was greater than any that could be attributed to Target. The trial court found Block's claims were unfounded and frivolous and he and his counsel acted in bad faith by pursuing those claims. Accordingly, the trial court awarded $22,-

259.27 in costs, disbursements, and fees against Block and his counsel.

## ISSUES

1. Did the trial court err by concluding Keiser was not qualified to give expert testimony?

2. Did the trial court err by requiring Keiser's opinion testimony on causation be based on a scientific or mathematical certainty?

3. Did the trial court err by concluding Block failed to introduce sufficient evidence of Target's negligence to create a jury question?

4. Did the trial court abuse its discretion by making sarcastic and derogatory comments to Keiser and Block's attorney in the presence of the jury or by engaging in a lengthy cross-examination of Keiser?

5. Did the trial court abuse its discretion by awarding Target costs, disbursements, and fees?

## ANALYSIS

### Standard of Review

A trial court's decision to grant or deny a motion for a new trial will not be disturbed on appeal absent a clear abuse of discretion. *Jack Frost, Inc. v. Engineered Building Components Co.*, 304 N.W.2d 346, 352 (Minn.1981). On review of a trial court's decision to grant a party's motion for dismissal, we view the evidence and every inference which may be drawn from that evidence in favor of the party against whom the motion was made. *Paradise v. City of Minneapolis*, 297 N.W.2d 152, 155 (Minn.1980).

1. Block first contends the trial court erroneously found Keiser not qualified to give opinion testimony on the "state of the flooring, lighting or other conditions of the display area at Target." A trial court's decision on the qualifications of a witness to render expert testimony

will not be reversed unless it is based on an erroneous view of the law or clearly not justified by the evidence.

*Hagen v. Swenson*, 306 Minn. 527, 528, 236 N.W.2d 161, 162 (1975).

Minnesota courts have adopted a broad definition of expertise. *See* 11 P. Thompson, *Minnesota Practice*, § 702.03 (1979). The supreme court has defined an expert as

"one who by practice or observation has become experienced in any science, art, or trade," (Rogers on Expert Testimony, § 1;) "a person having skill, experience, or peculiar knowledge on certain subjects or in certain professions," (*Heald v. Thing*, 45 Me. 392;) "one instructed by experience in a course of previous habit and practice or study, so as to be familiar with the subject," (*Nelson v. Sun Mut. Ins. Co.*, 71 N.Y. 453;) "a person of large experience in any particular department of art, business, or science," (*Dickenson v. Fitchburg*, 13 [Mass] Gray, 546;) * * *

*Davidson v. St. Paul, Minneapolis & Manitoba Railway Co.*, 34 Minn. 51, 55, 24 N.W. 324, 326 (1885); *see also Hagen*, 306 Minn. at 528, 236 N.W.2d at 162.

Keiser clearly qualifies as an expert under this definition, and the trial court's conclusion to the contrary is based on an erroneous view of the law. Keiser's 23 years of experience as an architect includes designing department stores from the ground up. In the past, Keiser had selected flooring materials for use in self-service department stores like Target. He is familiar with both the flooring installed at the Target store and the available alternatives. Moreover, his testimony indicates that in a store with heavy customer traffic, the decision concerning the type of flooring to install must be made with reference to safety considerations.

The record indicates that the relative safety of the different types of flooring available for Target's Roseville store was a matter within Keiser's expertise. Furthermore, Keiser's testimony establishes that he has practical experience and special knowledge concerning the lighting requirements and display practices of retail department stores. Accordingly, we conclude that the trial court committed reversible

error by ruling Keiser was not qualified to give expert testimony in these areas.

█ 2. Block next asserts that the trial court erred by requiring Keiser to testify to a mathematical or scientific degree of certainty that the accident would not have occurred if Target had installed a different type of flooring. The transcript reveals that the trial court questioned Keiser in the presence of the jury as follows:

> The Court: Mr. Keiser, can you tell me, to a *scientific certainty*, that Mr. Block would not have fallen had class two floor material been used in the Roseville Target store on May 2, 1987. Can you tell me, to a *scientific certainty*, that he would not have fallen had class two material been installed?
>
> The Witness: What do you mean by *scientific certainty?*
>
> The Court: *Scientific certainty* as an expert witness. Can you do that? Yes or no?
>
> The Witness: Yes, I believe.
>
> The Court: Alright. What would be the basis of your expertise to make that judgment?
>
> The Witness: Well, my judgment would be the category two flooring is the safest flooring that you can pick.
>
> The Court: Can you tell me that he would not have fallen even had class two been there, and what would be the basis of that opinion? I'm not asking you whether or not it's more resistant, sir.
>
> Can you tell me, to a *mathematical certainty*, based upon the laws of physics, as you may or may not understand them to be, that man of his height and weight, and where his center of gravity is when he places his body on a skateboard, in a position you don't know about, can you tell me, to a *mathematical certainty*, that he would not have fallen had class two material been used?
>
> The Witness: Not to a *mathematical certainty*.
>
> The Court: Then you are of no help to the jury on that question.
>
> \* \* \* \* \* \*
>
> By Mr. Gallagher:

> Q Mr. Keiser, would you be able to express that opinion to a reasonable degree of architectural certainty?
>
> A Yes.
>
> Q What would that opinion be?
>
> The Court: There is no foundation for that. It's irrelevant and immaterial. Architects cannot testify on that question. I have passed on that.

(Emphasis added.)

The law is not an exact science; therefore, Minnesota courts have never required experts to testify in terms of absolute or mathematical certainty. *See* Thompson, *supra*, § 703.02. In *Hiber v. City of St. Paul*, 219 Minn. 87, 16 N.W.2d 878 (1944), the supreme court explained the standard of certainty necessary for expert opinion testimony by stating:

> It is not necessary that the truth of an expert's opinion be capable of demonstration; it is sufficient that it is *probably true.*

*Id.* at 93, 16 N.W.2d at 881 (emphasis added). Similarly, in *Powers v. Eddy's Baking Co.*, 261 Minn. 363, 112 N.W.2d 625 (1961), the court observed:

> We have frequently held that *absolute certainty* in the opinion of expert medical witnesses is *not essential* to support a finding as to the relationship between an industrial accident and subsequent disability \* \* \*.

*Id.* at 368–69, 112 N.W.2d at 629 (emphasis added). The supreme court reiterated the standard for expert opinion testimony adhering to the "reasonable probability" test in *Walton v. Jones*, 286 N.W.2d 710 (Minn.1979). There, the court stated that

> expert testimony must demonstrate a *reasonable probability* that defendant's negligence was the proximate cause of the injury. Testimony must show that it was *more likely that [the injury] occurred from defendant's negligence than anything else.*

*Id.* at 715 (emphasis added); *see also State ex rel. Elg v. Erickson*, 363 N.W.2d 859, 862 (Minn.App.1985), *pet. for rev. denied* (Minn. May 20, 1985) (physician's testimony concerning *likelihood* defendant fathered

child admissible in paternity action); *Wohlfeil v. Murray Machinery, Inc.*, 344 N.W.2d 869, 874 (Minn.App.1984) (expert testimony regarding *probability* accident was caused by defect in machinery admissible in products liability action).

We hold that the trial court erred by requiring Keiser to express his opinion on causation to a mathematical or scientific degree of certainty. The record reveals that Keiser could have testified the accident would not have occurred had Target used category two flooring. Keiser testified that he could express this opinion "to a reasonable degree of architectural certainty."

The foundation for Keiser's opinion was his knowledge of coefficients of friction, a measurement of resistance to sliding on surfaces, his familiarity with the amount of friction placed on the ground by the wheels of a skateboard, and the relative slipperiness of category one flooring (the type in place on the date of the accident) compared with category two type flooring. This testimony should have been admitted under the "reasonable probability" standard as it could provide a jury with a reasonable basis for concluding "it was more likely than not" that the accident occurred due to Target's negligence. *See Jones*, 286 N.W.2d at 715.

■ 3. Block further contends that he produced sufficient evidence to raise factual questions for the jury on Target's negligence. The trial court, after excluding Keiser's expert testimony, dismissed Block's case, concluding that

> on the state of the evidence that's been demonstrated here today, that there was no negligence at all and there is no evidence of any negligence on the part of Target * * * in connection with the injuries sustained by [Block] * * *.

> \* \* \* \* \* \*

> In this instance, there is absolutely a paucity of evidence to show that any act or omission on the part of Target * * * had anything to do with the unfortunate injury sustained by [Block].

■ A motion for dismissal should be granted only when the evidence is insufficient, as a matter of law, to present a fact question for the jury. *Paradise*, 297 N.W.2d at 155. The substantive law governing a negligence claim is well established. A plaintiff in a negligence action must prove: (1) the existence of a duty on the part of defendant; (2) breach of that duty; (3) defendant's breach of duty proximately caused plaintiff's injury; and (4) damages. *Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 157 (Minn.1982). The law imposes a duty on a storeowner to exercise reasonable care for the safety of customers. *Jepson v. Country Club Market, Inc.*, 279 Minn. 28, 29, 155 N.W.2d 279, 280 (1967). A storeowner is not relieved of this duty simply because a hazard is known to a customer. *See Adee v. Evanson*, 281 N.W.2d 177, 179–80 (Minn.1979) (holding trial court committed reversible error by instructing jury storeowner had no duty to warn customers of known risks). A storeowner must guard against consequences which may be reasonably anticipated in the normal course of events. *Bisher v. Homart Development Co.*, 328 N.W.2d 731, 733 (Minn.1983).

■ Several factors, including the purpose for which Block was on Target's premises, the forseeability of the accident, and the ease with which the accident could have been prevented, must be considered in evaluating Target's conduct. *Id.* (citing *Peterson v. Balach*, 294 Minn. 161, 174 n. 7, 199 N.W.2d 639, 648 n. 7 (1972)). Each of these factors weighs in Block's favor. First, Block was on Target's premises to purchase a skateboard for his son at the implied invitation of Target.

■ Second, the record supports Block's claim that Target either knew or should have known its customers were trying out skateboards in the display area. Both Block and Keiser testified that several skateboards in the display area were unboxed and had soiled wheels. Additionally, as a merchant engaged in the business of selling skateboards, Target is charged with knowledge of the possibility of injury that necessarily accompanies the activity of

testing skateboards. Thus, the manner in which Block was injured was reasonably forseeable.

Third, the testimony of Keiser and Block indicates that Target easily could have taken steps that would have prevented the accident from occurring. Keiser's excluded testimony establishes the skateboard would probably not have slipped out from under Block sideways causing the injury if Target had installed category two type flooring. Based on this testimony, a jury could reasonably conclude that Target's failure to use category two type flooring in the area of the skateboard display constituted a breach of duty which proximately caused Block's injury.

Moreover, Keiser's excluded testimony reveals that if Target had insisted on installing category one flooring in the area of the skateboard display, the store should have either posted warning signs concerning the risk of injury or kept the skateboards in a secure display so that customers could not simply remove the boards from the boxes and test them freely. A jury could reasonably conclude that had a warning sign or a sign prohibiting testing skateboards been posted near the display area, Block would have obeyed the sign.

Similarly, had the skateboards been placed in a locked cabinet or some type of secure display, Block could not have tested the skateboards for sturdiness without contacting a salesperson. Viewing this testimony and the inferences that may be drawn from it in the light most favorable to Block, we conclude the evidence submitted by Block is sufficient to create jury questions on whether Target's failure to post warning signs or secure the skateboards constituted a breach of duty and whether that breach caused Block's injuries.

Finally, Keiser's excluded testimony on the sufficiency of the lighting in the display area was sufficient to create an issue of fact concerning whether Target's lighting practices constituted a breach of duty which contributed to Block's injuries.

Questions of negligence and proximate cause are generally factual matters for a jury to decide. *Schrader v. Kriesel,* 232 Minn. 238, 241, 45 N.W.2d 395, 397 (1950). "[I]t is only in the clearest of cases that the question of negligence becomes one of law." *Martinco v. Hastings,* 265 Minn. 490, 501, 122 N.W.2d 631, 640 (1963). Viewing the evidence in the light most favorable to Block, we conclude that this is not such a clear case and that the trial court erred by withdrawing the issue of Target's negligence from the jury's consideration.

4. Block contends that the trial court made several comments during trial in the jury's presence which exhibited bias and partiality against his case. Additionally, Block maintains that the trial court abused its discretion by engaging in a lengthy examination of Keiser during which the judge took on the role of the advocate for Target. The trial judge's examination of Keiser occupies nine consecutive pages of the transcript. The interrogation took place in open court with the jury present.

Our review of the record reveals that the trial judge made several sarcastic comments to Block's counsel and expert witness in the presence of the jury. In his memorandum denying Block's motion for a new trial, the judge acknowledged that he had engaged in "sarcastic questioning of plaintiff's expert." We find this conduct disturbing in view of the trial judge's "responsibility of striving for an atmosphere of impartiality during the course of a trial," and the judge's duty to refrain from making "remarks which might injure either of the parties to the litigation." *Hansen v. St. Paul City Railway Co.,* 231 Minn. 354, 360, 43 N.W.2d 260, 264 (1950).

Had this case been submitted to the jury and had the jury returned a verdict in favor of Target, we would have been compelled to order a new trial in the interests of justice, based on the judge's comments during trial. *Id.* at 361–62, 43 N.W.2d at 264–65 (supreme court ordered new trial due to trial court's continuous interruption of defendant's attorney during trial and caustic

clashes between attorney and judge during trial).

Furthermore, we find the extensive cross-examination conducted by the judge of Block's expert witness even more disquieting than the judge's sarcastic comments. Although Minn.R.Evid. 614(b) authorizes the interrogation of witnesses by the court, this "prerogative * * * should be exercised with great caution, particularly when the credibility of key witnesses is at issue." *State ex rel. Hastings v. Denny*, 296 N.W.2d 378, 379 (Minn.1980). The supreme court has explained that trial judges must use extreme caution when questioning witnesses due to "the recognized extraordinary prestige of the trial judge." *Id.* at 379. Thus, during trial a judge must not "desert the high position to which the judge is elevated, and assume the role of the advocate." *Hansen*, 231 Minn. at 360, 43 N.W.2d at 264 (quoting *Koontz v. State*, 10 Okla.Crim. 553, 561, 139 P. 842, 845 (1914)).

The trial judge in this case failed to heed the admonition of the supreme court and assumed the role of the advocate by conducting a cross-examination of Block's expert witness that destroyed the witness's credibility and demeaned his qualifications. We have no doubt this cross-examination would have been extremely prejudicial to Block's case had the case been submitted to the jury and would have required reversal of a verdict against Block.

5. Block contends the trial court abused its discretion by awarding Target costs, disbursements, and fees. The trial court found the award was justified because (1) the claims asserted by Block and his counsel were unfounded and frivolous; and (2) Block and his counsel acted in bad faith by pursuing this case.

Minn.Stat. § 549.21, subd. 2 (1988) provides in part:

Upon motion of a party, or upon the court's own motion, the court in its discretion may award to that party costs, disbursements, reasonable attorney fees and witness fees if the party or attorney against whom costs, disbursements, reasonable attorney and witness fees are charged acted in bad faith; asserted a claim or defense that is frivolous and that is costly to the other party; asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass; or committed a fraud upon the court.

An award of fees pursuant to section 549.-21, subd. 2 will not be reversed on appeal absent a showing of clear abuse of discretion. *Blattner v. Forster*, 322 N.W.2d 319, 321 (Minn.1982). This court has held that when a plaintiff advances a colorable claim, an assessment of fees will be reversed. *See In re Estate of Smith*, 444 N.W.2d 566, 568 (Minn.App.1989) (reversing award of fees in connection with will contest); *Valento v. Ulrich*, 402 N.W.2d 809, 814 (Minn. App.1987) (when bona fide issues exist to decide an award of fees is improper); *In re Application of Hofstad*, 376 N.W.2d 698, 702 (Minn.App.1985). The basis for a complaint must be *entirely unfounded* and frivolous before an award of fees is proper. *See Valento*, 402 N.W.2d at 814.

We find the trial court abused its discretion by assessing costs, disbursements, and fees against Block and his counsel. We reject Target's argument and the trial court's conclusion that Block's claims against Target were frivolous or pursued in bad faith. It was the trial judge, not the plaintiff, who proceeded on an erroneous theory of law and still assessed fees against plaintiff. This was clear error.

As indicated above, our review of the record reveals that Block presented sufficient evidence to create questions of fact concerning Target's negligence and to survive Target's motion to dismiss. Accordingly, we vacate the award of costs, disbursements, and fees assessed against Block and his counsel pursuant to Minn. Stat. § 549.21, subd. 2.

Target moved for fees and costs against Block for filing a frivolous appeal. In view of our resolution of the claims raised in this appeal, Target's motion is denied. *See National Farmers Union Property & Casualty Co. v. Fuel Recovery Co.*, 432 N.W.2d 788, 792 (Minn.App.1988), *pet. for rev. denied* (Minn. Feb. 10, 1989) (fees will be

awarded in connection with appeal only when appeal is frivolous, without foundation, or undertaken merely for delay).

### DECISION

The trial court erred by concluding Keiser was not qualified to give expert testimony. The trial court erred by requiring Keiser to give an opinion on causation based on a scientific or mathematical degree of certainty. The trial court erred by concluding Block failed to introduce sufficient evidence of negligence to create a jury question. The trial judge's conduct during trial amounted to an abuse of discretion. We vacate the trial court's order awarding Target $22,259.27 in costs, disbursements, and fees. We reverse and remand for a new trial on all issues, including damages.

Reversed and remanded.