Don **VALENTO and the Valento Volunteer Committee,** Appellants,

v.

Jon **ULRICH, et al., Defendants,**

**Kathy Nehm, Respondent.**

No. C3–86–1768.

Court of Appeals of Minnesota.

March 24, 1987.

James C. Whelpley, Roseville, for appellants.

Daniel G. Wall, Roseville, for defendants, and respondent.

Heard, considered and decided by HUSPENI, P.J., and PARKER and LESLIE, JJ.

PARKER, Judge.

Appellants Don Valento and the Valento Volunteer Committee brought a defamation action against respondent Kathy Nehm, author of a letter to the editor published in a weekly newspaper. The trial court granted Nehm summary judgment and awarded attorney's fees under Minn.Stat. § 549.21 (1984). Appellants argue that the court erred in granting summary judgment because there are genuine issues of material fact and that the court abused its discretion in awarding attorney's fees. We affirm in part and reverse in part.

## FACTS

Don Valento was a candidate for re-election to the Minnesota House of Representatives in the November 1984 election. An unincorporated campaign committee was organized to assist his election efforts. Kathy Nehm allowed Valento's opponent, Jon Ulrich, to place a campaign sign in her yard. She was not a member of the Ulrich campaign committee and had no involvement with the election other than allowing placement of the sign.

During the night of October 7 or early morning of October 8, someone drove a motor vehicle onto Nehm's lawn and destroyed the Ulrich sign. On her way to church on October 8, Nehm noticed that other Ulrich signs in her neighborhood had been knocked down, while Valento signs were left standing. She drafted a letter to the editor regarding the incident. Nehm had Ulrich read the letter, and he suggested changes before it was submitted for publication. The following letter was published in the Roseville-Falcon Heights Focus during the week of October 15:

On Saturday night, Oct. 7, someone drove their car up on our lawn and knocked down our Jon Ulrich campaign sign. They left a terrible mess of ruts in our lawn. At first I thought that this was an isolated prank or another problem of a car losing control coming over our hill. But after hearing from friends and neighbors I realized that it was not an isolated situation.

One very interesting fact also occurred to me, not one Don Valento lawn sign was knocked down. Even yards that had both candidates signs up had Ulrich's sign knocked down while Don Valento's sign was still standing.

I'd like to know just what exactly is going on? I think the people of Roseville also have a right to know. I don't think that dirty politics has any place in our community and I now feel even stronger about voting for Jon Ulrich.

A member of the Valento committee, Donald Brandt, went to the Nehm residence on October 15 or 16 to examine the yard for damages. He photographed the yard and reported to Valento that there were no ruts in the Nehm yard and no evidence that there had been ruts. Brandt demanded that the newspaper print a retraction, but the request was refused.

After his re-election, Valento formally complained of election law violations based on a brochure distributed by Ulrich supporters on October 29, 1984. The Ramsey County Attorney refused to bring charges, and in April 1985 this action was commenced. In addition to the defamation allegations relating to the Ulrich brochure, the complaint includes a defamation claim against Nehm regarding the letter to the editor. The plaintiffs are Valento and the Valento Volunteer Committee as an entity. The committee took no formal action to join the litigation and did not retain separate representation. During the course of discovery, several committee members disassociated themselves from the action.

Nehm moved for summary judgment and the motion was granted. The trial court also awarded $3,000 in attorney's fees under Minn.Stat. § 549.21 (1984). Judgment was entered and later amended to indicate that an appeal could be taken because all claims against Nehm had been resolved by the summary judgment.

## ISSUES

1. Did the trial court err in granting summary judgment?

2. Did the trial court abuse its discretion in awarding attorney's fees under Minn.Stat. § 549.21?

## DISCUSSION

### I

In order for a statement to be considered defamatory, it must be communicated to someone other than the plaintiff, it must be false and it must tend to harm the plaintiff's reputation and to lower him in the estimation of the community. *Stuempges v. Parke, Davis and Co.*, 297 N.W.2d 252, 255 (Minn.1980). In addition, when the plaintiff is a public official,

> an action * * * for libel must be considered 'against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.'

*Rose v. Koch*, 278 Minn. 235, 254, 154 N.W.2d 409, 423 (Minn.1967) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964)). The interest in the freedom to criticize public officials is so strong that, under certain circumstances, the officials may be subjected to defamatory and untruthful attack. *Id.* The rule that emerges, as enunciated in the *New York Times* decision, provides:

> The constitutional guarantees * * * [prohibit] a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not.

*New York Times*, 376 U.S. at 279–80, 84 S.Ct. at 726.

The Minnesota Supreme Court has defined actual malice as

> more than mere negligence and probably even more than highly unreasonable conduct. * * * Mere errors in judgment are

not sufficient to constitute actual malice and a defamatory statement must have been made with an awareness of its probable falsity, as demonstrated by "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." * * * It is not enough for a public official to show that the defendant has acted from personal ill-will but rather he must prove that the publication was made with a high degree of awareness that it was probably false.

*Hirman v. Rogers*, 257 N.W.2d 563, 566 (Minn.1977).

Appellants concede that because Valento is a state representative, the *New York Times* rule is applicable and actual malice must be shown in order for appellants to successfully pursue a defamation action against Nehm. We note that Nehm's letter refers to events taking place during an election campaign and not to legislative activities. However, the concept of "official conduct" of an elected representative must, for defamation purposes, include efforts to win re-election.

Although we recognize that the volunteer committee has not taken formal action to join this litigation, to the extent that the committee is a proper party plaintiff, we treat it as a public figure. *See Rosenblatt v. Baer*, 383 U.S. 75, 86, 86 S.Ct. 669, 676, 15 L.Ed.2d 597 (1966), and *Rose*, 278 Minn. at 256, 154 N.W.2d at 424. Therefore, the *New York Times* rule is applicable to the committee, and actual malice must be shown by direct evidence.

Appellants argue that there are genuine issues of material fact to be resolved and that summary judgment was inappropriate. First, they claim that Nehm lied in stating there were ruts in her yard following destruction of the Ulrich sign, indicating that she acted with actual malice. Based on observations and photographs made shortly after the letter was published, appellants contend there were no ruts in Nehm's lawn. Nehm stated that the ruts were repaired by the time the letter was published, but appellants cite statements in

Nehm's deposition[1] that the repairs were not made until some months later. In the deposition Nehm said the ruts disappeared within two weeks, after her husband had repeatedly raked the lawn. She also said the area was not filled in with dirt until some months later as part of spring-time yard work.

■ However, if there were a genuine issue as to the existence of ruts, raising such an issue is, in itself, insufficient to satisfy appellants' burden of showing actual malice. Even if Nehm were unable to prove the truth of the letter's statement about ruts, "[t]he unsuccessful attempt to prove the truth of the defamatory statement cannot itself * * * establish actual malice." *Rose*, 278 Minn. at 264, 154 N.W.2d at 428. Appellants rely on an inference that because Nehm falsely stated there were ruts in her yard, she acted with actual malice. Malice is not to be presumed or inferred from the fact that a false statement has been made, but must be proved by plaintiff with convincing clarity. *Id.* at 261, 154 N.W.2d at 427. Consequently, whether there were or were not ruts in the yard is immaterial to proving malice.

Appellants further state that Nehm was reckless in making a generalized statement that only Ulrich signs were damaged based upon a limited observation made while going to and from church on one Sunday morning. Appellants do not claim that Valento signs in the area near Nehm's residence were also vandalized, but that, had Nehm made a more extensive survey, she would have found that the sign destruction affected both candidates.

Again, raising such an issue does not approach the showing required in order to prove Nehm acted with actual malice. Malice is probably more than mere negligence or even highly unreasonable conduct. *Rose*, 278 Minn. at 262, 154 N.W.2d at 427. In applying the *New York Times* standard, it has been held that failure to make a

reasonable investigation is insufficient to show actual malice. *Id.* (citing *Time, Inc. v. Hill*, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967)).

■ Finally, appellants claim the letter gives rise to a false innuendo that either Valento or his campaign committee were involved in sign vandalism and dirty politics. The letter does not expressly state that either Valento or the committee were responsible for the sign destruction. Under Minnesota law, the court determines whether an alleged defamatory innuendo is reasonably conveyed by the language used. *Price v. Viking Press, Inc.*, 625 F.Supp. 641, 644 (D.Minn.1985). However, even if the court were to conclude that the letter falsely implies that appellants were responsible for the sign destruction, such a conclusion does not address the issue of actual malice. By arguing only that Nehm's letter contained a false innuendo that appellants played a part in damaging Ulrich campaign signs, appellants must rely on an inference of actual malice arising from such an innuendo. As we have already noted, malice cannot be presumed or inferred. *Hirman*, 257 N.W.2d at 566.

Appellants contend that further discovery is necessary in order to develop their case fully. They do not, however, specify what discovery will be conducted. Both Nehm and Ulrich have been deposed. Evidence of actual malice on Nehm's part in publishing the letter to the editor sufficient to defeat a motion for summary judgment should have been available through this discovery, if it existed. The case had been pending for several months before the motion for summary judgment was considered, indicating that appellants had sufficient time at least to outline areas of further inquiry if the issue of malice were to be pursued through additional discovery.

Because it is necessary to prove with convincing clarity that Nehm acted with actual malice in publishing the letter to the

1. The deposition was not presented to the trial court and was not included in the record. However, because both parties refer to the deposition, appellants were asked at oral argument to submit a copy of it for review by this court.

editor, failure to make such a showing precludes a finding that appellants have been defamed. Appellants have not proved actual malice, nor have they presented evidence to indicate that a genuine issue of material fact remains to be resolved. Consequently, the trial court did not err in granting Nehm's motion for summary judgment.

## II

 The trial court awarded Nehm $3,000 in attorney's fees under Minn.Stat. § 549.21, subd. 2 (1984), which provides:

Upon motion of a party,. the court in its discretion may award to that party costs, disbursements, reasonable attorney fees and witness fees if the party or attorney against whom costs, disbursements, reasonable attorney and witness fees are charged acted in bad faith; asserted a claim or defense knowing it to be frivolous; asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass; or committed a fraud upon the court.

An award of fees under this statute can be upset only upon a finding of abuse of discretion by the trial court. *National Recruiters, Inc., v. Toro Co.*, 343 N.W.2d 704, 709 (Minn.Ct.App.1984) (citing *Blattner v. Forster*, 322 N.W.2d 319, 321 (Minn.1982)). Fees may be awarded upon a finding that a complaint is unwarranted or unfounded. *Strand v. Nelson*, 380 N.W.2d 906, 910 (Minn.Ct.App.1986). However, when the record indicates no bad faith and when there are bona fide issues to decide, it is improper to award fees. *Application of Hofstad*, 376 N.W.2d 698, 702 (Minn.Ct. App.1985).

 The trial court noted that this action was commenced after a vigorously contested campaign and implied that appellants initiated the action in an attempt to seek vengeance. However, after reviewing the record, we find no evidence of improper political motivation. Although the action was not well-founded in law, appellant Valento was apparently motivated by a good-faith belief that his integrity had been impugned.

Because actual malice cannot be implied, direct evidence is needed. Appellants attempted in this action to show actual malice on Nehm's part, but the evidence presented was insufficient. The issue is not without subtlety and in the context of this case could be considered a fairly close point. Therefore, we must conclude that the claim was not asserted frivolously.

There is no indication the action was intended to harass critics of Valento's performance as a legislator or to discourage others from running against him. Instead, the action appears to have been brought as a matter of principle. While we disagree with the legal basis of the action, there is nothing to indicate an intent to delay or harass. Nor is there any indication of a fraud upon the court.

None of the reasons for awarding fees under Minn.Stat. § 549.21, subd. 2, have been shown. Consequently, the trial court abused its discretion in awarding fees under that section, and that portion of its decision must be reversed.

## DECISION

The trial court did not err in granting summary judgment, because appellants failed to show that a genuine issue of material fact existed regarding actual malice. The court abused its discretion in awarding attorney fees, because none of the statutory bases for such an award had been shown.

Affirmed in part and reversed in part.