**In the Matter of the Application of Stanley M. MROSAK and Delores A. Mrosak to Register the Title to Certain Land.**

### No. C5–87–499.

Court of Appeals of Minnesota.

Nov. 17, 1987.

Review Denied Jan. 28, 1988.

Evan J. Henry, pro se.

Larry K. Houk, Roseville, for respondents Mrosak.

Considered and decided by SEDGWICK, P.J., and PARKER and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Evan J. Henry appeals from the district court's grant of respondents Mrosaks' application to register their land pursuant to Minn.Stat. § 508.10. Appeal is also taken from district court's order awarding respondents $3,175.10 in attorney fees based on what the court determined was appel-

lant's gross negligence amounting to bad faith. We affirm.

## FACTS

Respondents are owners in fee simple and as joint tenants of property described as lot 17 of auditor's plat no. 4. This property lies on the shore of Crooked Lake in Anoka county, Minnesota. In 1934, the auditor of Anoka county filed the auditor's plat which included the above description of the respondents' property. Such a plat is not a subdivision plat based on a survey of the premises in accordance with Minnesota Statutes, Chapter 505, but is an auditor's subdivision based on deeds of record in accordance with Minn.Stat. § 272.19. This description has been used for tax purposes and as the sole description of the property for almost 50 years.

Respondents were informed, apparently in 1983, that auditor's plat no. 4 was an inadequate description of their property, had numerous inconsistencies and left their property unmarketable. In an attempt to clear up the problems with the title created by the auditor's plat description, the respondents, in accordance with Minn.Stat. § 508.10 (1982), applied to the district court to have their property registered. As part of this process, the respondents hired Raymond Prasch to survey the property and give them a more accurate description of it. This survey was completed and dated August 12, 1983. It was filed with the clerk of court on January 16, 1985.

The testimony disclosed numerous problems with the auditor's plat description of the property. Among these problems were the following:

1) The boundaries contained in the auditor's plat did not conform to the boundary lines of tracts actually occupied by the owners.

2) The auditor's plat used the shore of Crooked Lake as the starting point for a set of bearings and that, because the shore of the lake would go up and down, the description of the property would continue to change. This left the description of the property vague and indefinite.

3) The description used in the auditor's plat was inaccurate because its boundaries did not "close," i.e., the lines of the property did not meet up if one took measurements around the property.

Among those who were potentially affected by respondents' application to have their land registered was appellant, who owns property described as lot 18, auditor's plat no. 4. This land abuts respondents' lot. According to the lines set out in the auditor's plat, respondents' boundary passes through a portion of appellant's house. As a result, appellant was considered an interested party under Minn.Stat. § 508.15. Accordingly, he received a summons and complaint in February of 1985 and served his answer on February 27, 1985.

In a series of correspondence between the parties and between appellant and others, appellant voiced concerns regarding the registration of respondents' property. Primarily, appellant believed that the auditor's plat sufficiently described the property owned by the parties. In a letter dated April 20, 1985, from appellant to respondents, appellant stated that it was his *personal* opinion that "a vigorous defense of Auditor's Plat No. 4 would be successful" and therefore the parties should continue to rely on the auditor's plat.

On August 26, 1985, the Anoka County Surveyor, Roland W. Anderson, sent a letter to appellant stating there were "land problems that exist in Auditor's Plat No. 4" (as evidenced by maps and surveys previously sent to appellant) and that all the land owners in the area would "eventually have to do something in order to have marketable title." Anderson also suggested to appellant that he join with other land owners in the area to hire an attorney and a surveyor in an effort to clear up the problem. Appellant did not heed this advice, however, and continued to press his claim that the auditor's plat was defensible. At no time prior to trial did he seek the advice of an attorney experienced in real estate law, nor did he hire a surveyor to do an independent examination of the property.

In October, appellant received a certificate of readiness for trial. Respondents also filed a notice claiming that the appellant was acting in bad faith and seeking attorney fees. According to the trial court's findings of fact, appellant did nothing at this point to assess his legal stand. The court found that appellant did not seek the advice of an attorney nor did he have the land in ·question surveyed. As the court stated in its order for judgment, "instead of seeking the proper advice, Henry filed a Certificate of Non-Readiness and served interrogatories which were directed to the bad faith issue." The matter finally came to trial on January 27, 1986.

At trial, respondents presented three witnesses in order to lay the necessary foundation for the registration of their property. They were Roland Anderson, the Anoka County Surveyor, Raymond Prasch, who surveyed the respondents' property, and Stephen Nash, an attorney who testified regarding respondents' attempts to notify all interested parties. The testimony of Anderson and Prasch was quite detailed in its explanation of the inconsistencies in the auditor's plat and the problems that were created when one tried to rely on it. Both men explained the findings of the survey taken by Prasch and how this survey gave a much more complete and accurate description of the respondents' property. Both men agreed that the effect of the new survey was to conform the legal description of the property to the lines of current occupation and that the respondents were claiming less than they could have under the auditor's plat.

Appellant called no witnesses to testify regarding the registration issue. In his case in chief, appellant only addressed the issue of whether he had been acting in bad faith. Appellant first called respondent Stanley Mrosak. Mrosak testified that it was his belief that the appellant had been acting in bad faith in contesting this application. Next, appellant took the stand. During the course of his testimony, the following exchange took place:

THE COURT: * * * [P]erhaps we could take this in two stages, Mr. Henry, if I could just direct you in a general way so you will know, so you can direct your testimony. Number one, would you first tell us why—give us the testimony that you think is germane to your side of the case regarding why you do not feel the Court should allow this property of Mr. Mrosak's to be torrensed, and then the second part of your testimony after you are done with that part can deal with why you feel you have acted in good faith. * * *

MR. HENRY: Well, at this point, your Honor, I think that my concerns have been satisfied as far as the torrensing of Mr. Mrosak's property * * *.

As I indicated, my principal concern was that Mr. Mrosak's property be described for registration purposes in accordance with the present lines of occupation as shown in Mr. Prasch's survey of August 12, 1983, and from what I understand, that will now be the case.

Appellant then went on to address the bad faith issue. On cross-examination, appellant's testimony showed that he had been informed by several parties that there were problems with the auditor's plat, that the survey done by Prasch was an accurate description of the property, and that he should consult a surveyor or an attorney. After questioning appellant regarding a letter he had received from the Board of Architecture, Engineering, Land Surveying and Landscape Architecture dated October 25, 1984, Mr. Neilson, attorney for the respondents, proceeded:

Q. Why wasn't (the response you received from the board) sufficient to answer your question?

A. Because it didn't answer the questions. If you will follow along, you will see further questions which I raised.

Q. The further questions that you raised, have those answers been given to you prior to testimony today? The same answers, exactly the same answers why you have different bearings, why you have different footage, why you can't measure along the lake, have those answers been given to you?

A. I think through the proceedings in this trial I have been more satisfied now than before.

During the trial, appellant tried to explain why he was fighting the registration of the respondents' property despite the fact that the evidence indicated that he would be harmed by enforcing the status quo. Appellant's explanation was that he had "lived with Auditor's Plat No. 4 all these years," and that he wanted to "make sure that the process was working properly."

The court granted respondents' application to register their land. In addition, the court assessed attorney fees against appellant, pursuant to Minn.Stat. § 549.21 (1984), in the amount of $3,175.10. The court did not grant respondents their full request but granted to them fees incurred during the three month period between October 17, 1985, when appellant received notice that the case was set to go to trial, and January 28, 1986, the conclusion of the trial. The judge based his award of attorney fees on what he saw to be appellant's "gross negligence" amounting to bad faith in failing to seek "legal or survey advice" or otherwise assess his position prior to trial. The court stated that appellant "was grossly negligent when, after receiving the Certificate of Readiness and notice of bad faith, he did nothing affirmative to assess his legal position for a period of three months," and that the appellant had "relied on the trial to educate himself." The court acknowledged that the basis of its finding that the appellant acted in bad faith was not based upon a finding that the appellant had acted with a malicious motivation or for greed or profit. It held that appellant's gross negligence "for not seeking the *advice* of a surveyor or attorney," was sufficient to support a finding of bad faith under section 549.21 (1984) and sufficient to base an award of attorney fees.

## ISSUES

1) Did the trial court err in granting respondents' application to register their land?

2) Were attorney fees properly awarded?

## ANALYSIS

### I.

Appellant first raises the propriety of the trial court's order granting respondents' application to register their property. This order will not be reversed unless it can be said that it was clearly erroneous. Minn.R. Civ.P. 52.01. We do not find it to be so and uphold the trial court's decision.

■ The record clearly supports the trial court's action. Respondents presented three witnesses in support of their application. The testimony was quite extensive as to the problems encountered when trying to rely on auditor's plat no. 4. Prasch and Anderson both showed that the auditor's plat was so deficient that the boundaries did not even close.

On the other hand, appellant presented no evidence to support his objections to the registration of the property. He did not support his personal belief that the auditor's plat was defensible. Nor did he present any evidence to show that he would be harmed if the application was granted. In his own testimony, he conceded the appropriateness of allowing the respondents to register their property along the lines of current occupation. We struggle to understand, as did the trial court, why appellant chose to so vociferously fight respondents' application—a move that could only benefit him. Whatever appellant's motives, it is clear that the trial court acted properly in granting the application to register respondents' property.

### II.

The more difficult issue in this case is whether the trial court correctly assessed attorney fees against appellant. Such fees may not be awarded absent a specific contract permitting or a statute authorizing such recovery. *Barr/Nelson, Inc. v. Tonto's, Inc.*, 336 N.W.2d 46, 53 (Minn.1983); *Strand v. Nelson*, 380 N.W.2d 906, 909 (Minn.Ct.App.1986). Minn.Stat. § 549.21 (1984), under which the award was granted, provided:

Upon a motion of a party, the court in its discretion may award to that party costs, disbursements, reasonable attorney fees and witness fees if the party or attorney against whom costs, disbursements, reasonable attorney fees and witness fees are charged acted in bad faith; asserted a claim or defense knowing it to be frivolous; asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass; or committed a fraud upon the court. * * *.[1]

*Id.*

Section 549.21 is a codification of the common law rule that attorney fees are recoverable where the party has acted in bad faith, vexatiously, or for oppressive reasons. *Fownes, et al. v. Hubbard Broadcasting, Inc.,* 310 Minn. 540, 542, 246 N.W.2d 700, 702 (1976); *National Recruiters, Inc. v. Toro Company,* 343 N.W.2d 704, 708 (Minn.Ct.App.1984). Under this statute, an award of attorney fees may be upset only upon a finding of abuse of discretion by the trial court. *Blattner v. Forster,* 322 N.W.2d 319 (Minn.1982); *National Recruiters, Inc.,* 343 N.W.2d at 709.

■ Fees may be awarded upon a finding that a complaint is unwarranted or unfounded. *Valento v. Ulrich,* 402 N.W.2d 809, 814 (Minn.Ct.App.1987) (citing *Strand v. Nelson,* 380 N.W.2d at 910). This court has also upheld an award of fees where a party failed to present any evidence at trial in support of its position. *See National Recruiters, Inc.* However, where the record indicates no bad faith and when there are bona fide issues to decide, it is improper to award fees. *Valento,* 402 N.W.2d at 814 (citing *Application of Hofstad,* 376 N.W.2d 698, 702 (Minn.Ct.App. 1985)). The mere fact that the action is not well-founded in law is not sufficient to render an award of attorney fees appropriate. *Valento,* 402 N.W.2d at 814. The court in *Valento* held that the trial court's award of attorney fees was an abuse of discretion where the appellant was "motivated by a

good faith belief that his integrity had been impugned." *Id.*

■ We disagree with the trial court's belief that gross negligence constitutes bad faith for the purposes of awarding attorney fees. However, this court will not reverse "solely because of the trial court's choice of words in its findings of fact." *Strand,* 380 N.W.2d at 910. On review of the record, we feel that appellant's conduct in fact amounted to bad faith, not just to gross negligence. Therefore, we uphold the trial court's award of attorney fees.

Appellant's claims were unwarranted and unfounded. He was not acting on some well founded (or at least reasonable) legal basis. Rather, he was acting on his "personal opinion" that auditor's plat no. 4 was defensible. When it became clear that the case was going to trial, he consulted neither a surveyor nor an attorney familiar with this area of the law. Appellant failed to take any steps to assess his position prior to trial. At trial, he presented no evidence in support of his position. As the trial court noted, appellant relied on the trial to educate himself. This, we believe, constitutes bad faith.

In holding that appellant's behavior amounted to bad faith, we affirm absolutely the right of an individual to represent himself at trial in the manner he or she sees fit. However, with this right comes responsibility. A litigant, whether represented by counsel or acting pro se, must do something more than merely interfere with the rights of others. If appellant thought he had a legitimate reason for objecting to respondents' application to register their property, then he had a duty to put such objections in concrete form prior to the time the case came to trial. There was ample opportunity for appellant to do this. He was told by at least one party that he should hire a surveyor if he had questions about the inadequacies of auditor's plat no. 4. He did not.

Respondents acted in good faith at all times through this process. After being

---

1. In 1986, the legislature amended section 549.21. The statute now would allow recovery where the asserted claim was frivolous and costly to the other party, whether or not it was knowingly frivolous.

informed that the description of their property was inadequate, they took steps to avoid future legal problems. Their actions did not harm appellant. In fact, the registration of the property would benefit appellant inasmuch as the auditor's plat showed the line of respondents' property running through the middle of appellant's house. Again, we are unable to discern why appellant chose to fight this action. It is his claim that he had to insure that the process was working. But while appellant was insuring that the process was working, he cost respondents a great deal of aggravation, time and expense. Had there been some good faith basis for his claim, we could not uphold an award of fees. However, the record is clear that there was no such basis. Under these circumstances, attorney fees are appropriate.[2]

## DECISION

The order of the trial court granting respondents' application to register their property is hereby affirmed. An award of attorney fees to respondents in the amount of $3,175.10 is also affirmed.

Affirmed.

---

**2.** Appellant has submitted numerous items to this court seeking their inclusion in the record. The apparent goal of appellant is to show that he was acting in good faith in objecting to respondents' application to register their land. Respondents object to this attempt to supplement the record. We have reviewed these items, and conclude that their inclusion in the record would not cause us to alter our analysis. None of the proposed items negate the fact that appellant failed to make a good faith effort to assess his position prior to trial.